## LIVINGSTON *vs.* HARRIS and LIVINGSTON.

Under the provisions of the revised statutes, it is not necessary for a complainant who applies to this court for relief against an usurious contract, either to pay or to offer to pay the principal or the interest of the money actually loaned; provided the answer of the defendant, on oath, is waived by the bill.

The complainant cannot call upon a defendant for a discovery as to the usury charged in the bill, unless he pays or offers to pay the amount equitably due, exclusive of the legal interest.

Where a defendant cannot answer as to particular facts charged in the bill without criminating himself, or subjecting himself to a penalty or forfeiture, he may demur to the discovery and answer as to the relief.

A defendant in his answer, may object to the discovery of any matters charged in the bill which will subject him to a criminal prosecution, or to a forfeiture or penalty.

It is inconsistent with the spirit of the constitution to compel a party to be a witness against himself in a case where the effect of the disclosure which he is required to make will subject him to a penalty or a forfeiture.

Sept. 18.  THIS was an application on the part of the defendant S. Harris, for the dissolution of an injunction. The bill stated that a suit at law had been brought by the defendant Harris, against the complainant, H. Livingston, and the defendant, R. L. Livingston, on a joint and several note which the complainant had signed as surety for his brother, R. L. Livingston; and which the complainant had subsequently discovered was given to secure an usurious loan from Harris to his co-defendant in this suit. The bill prayed a discovery of the usury; that the note might be delivered up and cancelled; and for an injunction to stay the proceedings at law. There was no offer on the part of the complainant to pay either the principal or the legal interest of the money actually loaned; no part of which had ever been repaid to the lender.

*J. Rhoades*, for the complainant. It will be contended by the counsel for Harris, that the complainant is not the borrow-

er, under 1 *R. S.* 773, § 8. We insist that he is the bor-
rower, within the intent and meaning of the statute, i. e. he is
the person from whom the plaintiff at law seeks to recover his
money loaned. But this court will never compel the complain-
ant, under the circumstances disclosed in the bill, to bring into
court, or offer to pay, what he never received. He owes no
debt or duty to S. Harris; he has never received any thing
from him. If bound to pay him money, he is bound, not by
the principles of equity, but in virtue of a contract, which if
not tainted with usury is binding on him; but which, if the
facts stated in the bill are true, is absolutely void.

The provision of the statute is as broad as the rule of equity,
on which the defendant relies, and the decisions founded there-
on; to wit, that he who seeks equity must first do equity. It
was the object of the provision of the statute to discourage
usury and impose a penalty upon the usurer. It was the in-
tention of the legislature to do away with those very decisions
upon which this motion is founded. (*See* 1 *R. S.* 773, § 8,
*and Reviser's Notes, ch. 4, part 2, tit. 3, p. 14 to 17.*) And will
a court of equity say that by that act it was the intention of the
legislature to release the defendant Livingston, who is bound in
honor and good conscience to pay back the money in fact
loaned to him, from the payment of any money whatever;
and to compel the complainant who never received a particle
of consideration for the note, or benefit from the loan, to bring
into court the $1,800 as a condition precedent to seeking re-
lief from the $200 usury? This construction of the statute
cannot for a moment be tolerated.

*J. W. Edmonds,* for the defendant Harris. The question is,
how far the revised statuses, (1 *R. S.* 773, § 8,) have altered
the rules by which this court was formerly governed, in grant-
ing relief, or compelling a discovery in cases of usury. The
master, in allowing the injunction, has acted under the im-
pression that those rules were entirely abrogated. In this he
erred. The rule of this court, that a party who seeks equity
must first do equity, has led to the doctrine that he who seeks
a discovery in aid of a plea of usury must comply with two
conditions: one, to bring into court the money fairly due, with

legal interest; and the other to waive the forfeiture created by the statute, or in other words, offer to pay that money to the lender; and this court never granted relief in such cases, unless upon a compliance with both these requisites. (*Tupper* v. *Powell*, 1 *John. Ch. Rep.* 439. *Rogers* v. *Rathburn*, *Id.* 367. *Taylor* v. *Bell*, 2 *Vern.* 171. *Fanning* v. *Dunham*, 5 *John. Ch. Rep.* 142. *Morgan* v. *Schermerhorn*, 1 *Paige's Rep.* 554. *Fulton Bank* v. *Beach*, 1 *Id.* 429. *S. C. on Appeal*, 3 *Wendell*, 587.) In what respect has the statute altered this rule? In the first place, it dispenses with the payment of, or an offer to pay, any interest whatever on the sum borrowed; thereby depriving the lender of any profits from money loaned usuriously. And in the next place it dispenses with the necessity of a deposit of the principal, but is silent as to the offer to pay the principal; thus leaving that part of the rule of this court untouched and in full force. The offer to pay may be enforced by this court as a condition of granting relief; and if it had been intended to dispense with the offer to pay the principal, it would have been so declared in the statute.

Again; this court relieves only against the usurious excess, and never enforces a forfeiture of the sum actually loaned, unless the lender comes into this court for his remedy and the borrower can make out the usury by other means than the oath of the lender. (*Rogers* v. *Rathburn*, 1 *John. Ch. Rep.* 367. *Viner*, tit. *Usury*, 315. *Fanning* v. *Dunham*, 5 *John. Ch. Rep.* 142.) This court never compels a discovery in aid of a forfeiture. (1 *John. Ch. Rep.* 367, *and the cases there cited.*) If the construction of the statute contended for by the complainant is correct, then the lender can be compelled to make a discovery of the usury, and the forfeiture of the whole money loaned can, under the 5th section of the statute, be enforced, either by the complainant, who may withdraw his suit, or, as in this case, by one of the defendants, who does not seek relief. Thus the lender would be compelled either to commit perjury, or to forfeit his whole demand; and the whole doctrine of this court in regard to the usurious contracts would be entirely overturned. (*Cooper's Eq.* 205. *Redesd. Tr. Ch. Pl.* 158.) This would be contrary to the spirit of the age, and cannot be done, unless required by an express and clear enactment of the

legislature. The 6th section of the act, relates only to a dis-
covery of things already "taken, accepted, or received" usuri-
ously, and does not apply to a bill in aid of a plea at law.
(*Tupper* v. *Powell*, 1 *John. Ch. Rep.* 439.)

Again; we contend that the complainant is bound to de-
posit, as well as to offer to pay, the principal. He sets up in
his bill, that he is the surety only, and that the money was
loaned by one of the defendants to the other. He is not the
borrower; and the 8th section of the statute dispenses with
the deposit as a condition of granting relief to the borrower
only.

The bill prays for relief as well as a discovery. The reme-
dy is complete at law. This is good ground of demurrer; but
this objection, as well as the objection that there is no deposit
of the money equitably due, may be taken advantage of by a
motion to dissolve the injunction. (*Minturn* v. *Seymour*, 4 *John.
Ch. Rep.* 173. *Skinner* v. *Dayton*, 2 *John. Ch. Rep.* 226.)

THE CHANCELLOR. In deciding this case it is necessary to
give a construction to the eighth section of the title of the re-
vised statutes which relates to the interest of money; which
title embraces the existing usury laws of this state. (1 *R. S.*
772, § 8.) On the part of the complainant it is insisted, that,
under the provisions of this section, the defendant is bound to
answer on oath as to any usurious consideration contained in
an existing security, and to forfeit the whole debt if the usury
is admitted by such answer. That the complainant is not re-
quired to pay, or to offer to pay, any part of the principal or the
legal interest of the money actually lent, to entitle him to an an-
swer from the defendant, and to a decree declaring the secu-
rity void. The counsel for the defendant Harris, on the other
hand, contends that the provisions of this section of the stat-
ute were only intended to deprive the lender of money upon
usury of the interest on the sum loaned, where the borrower
is compelled to resort to this court for a discovery of the usuri-
ous contract; and also to relieve the complainant from the
inconvenience of paying or depositing the sum actually due, in
the first instance, as a condition of granting relief by compel-
ling a discovery and granting an injunction to stay proceedings

at law in the mean time.   He also insists that this section is limited to the case of a suit brought by the borrower ; and that it is not applicable to the case now under consideration, in which the complainant expressly alleges that he was not the borrower, and that he signed the note only as a surety for his brother to whom the loan was made.

This section of the revised statutes has undoubtedly introduced a new principle in the law of usury, as administered in this court.   And to ascertain its true construction, it is necessary to enquire how the law previously stood and what change the legislature intended to introduce.   The usury laws having declared all bonds, bills, notes, contracts, and assurances, which were contaminated with usury, void, it followed of course, that no suit could be sustained by the usurer or his assignee, either at law or in equity, founded upon the usurious contract or security ; even to recover back the money actually lent with the legal interest thereon.   This, however, was found by the courts to be an insufficient protection to the borrower, from his inability to establish the fact of usury by the ordinary modes of proof adopted in courts of common law.   It was also found that in many cases where the borrower had the means of proving the usury, the nature of the security taken by the lender was such as to give the borrower no opportunity to plead and establish the fact in a court of law.   A common case of this kind was the taking of a bond and warrant of attorney and entering a judgment thereon ; by which means the defendant was precluded from pleading the usurious consideration of the bond.   And where the lender had taken a mortgage for the loan, containing the usual power of sale, he also had the right to foreclose the equity of redemption of the borrower by advertising under the statute, and without applying to any court.   In these and some other cases of a similar nature, it became necessary for the borrower to resort to the extraordinary jurisdiction of the court of chancery to obtain discovery or relief.   But when he applied to this court as a complainant, or actor, he found himself differently situated in respect to his rights under the usury laws, from what he would have been when placed in the situation of a defendant, either at law, or in equity.   Coming here as the com-

plainant to ask the equitable interference of this court, he was met by the standing maxim of courts of equity, that " he that will have equity must do equity." (*Francis' Max.* 1.) And this court could not afford him any relief against the usurious premium included in the security which he sought to set aside, except upon the terms, or condition, that he should repay to the defendant the money actually lent, with legal interest thereon. If a discovery was necessary, either to aid him in a defence at law, or otherwise, he was also met by another settled principle of this court, that it will not extort from the defendant an answer on oath, and thus compel him to be a witness against himself, where such answer might subject him to a criminal proceeding, or to a penalty or forfeiture, or to any loss in the nature of a forfeiture.

In accordance with these two principles it had become the settled law of the court of chancery, previous to the adoption of the revised statutes, that a defendant was not bound to answer a bill seeking a discovery as to any usurious transactions, where a disclosure of the usury would, or might subject him to the forfeiture or loss of the whole, or any part, of the money actually lent, or of the legal interest thereon. And even in cases where the complainant could establish the usury without the aid of the defendant's answer, no relief could be granted to him in this court, except upon the equitable terms, or condition, that he should pay to the defendant what was justly due. (*Whittimore* v. *Francis*, 8 *Price's Rep.* 616. *Tupper* v. *Powell*, 1 *John. Ch. Rep.* 439. *Scott* v. *Nesbit*, 2 *Cox's C. C.* 183. *Fanning* v. *Dunham*, 5 *John. Ch. Rep.* 122.) These two principles are distinct in their natures, although they were both applicable to the case of a complainant seeking discovery and relief in this court, against an usurious contract. And the last might be entirely abolished by the legislature, without interfering with any of the natural rights of the defendant, or doing any thing inconsistent with the spirit of our free institutions. The rule that this court will not lend its aid to a party to enforce a penalty or a forfeiture, and the maxin that a party coming here to ask equity must do equity, relates merely to the principles upon which this court acts in the exercise of its general jurisdiction.

And if the legislature may authorize courts of law to act on different principles, they may confer the same powers on this court also; provided the right of trial by jury is not infringed, and no other provision of the constitution is violated. The constitution, however, has wisely provided, that a party shall not be compelled in any criminal case to be a witness against himself. And this principle, by the common law, was extended to proceedings in civil cases where the witness was called upon to make a disclosure which might subject himself to a forfeiture, or penalty, or to any loss in the nature of a penalty. It would therefore be inconsistent with this principle of the common law, and with the spirit of the constitution, to compel a defendant to be a witness against himself, where the effect of the disclosure which he was required to make would be to subject him to a forfeiture of the money actually loaned, and to which no other person had any equitable claim. Interest not being recoverable at the common law, and the right to receive it depending upon the express or implied agreement of the parties, under the tacit sanction of the statute regulating the rate of interest, perhaps the legislature, in that statute, might provide for a discovery by the oath of the lender; which would prevent a recovery of interest, without violating the principle of the constitution and of the common law, to which I have before referred. Although a defendant could not be compelled to answer any allegation in a bill which might subject him to a forfeiture or penalty, yet where the complainant, only, was entitled to the penalty, or where he alone could take advantage of the forfeiture, if he expressly waived it in his bill, the defendant was bound to make a discovery, which might be necessary to establish some other right or claim of the complainant. For if the penalty or forfeiture was waived in the bill, the defendant could not expose himself to the same by making the discovery; as this court would, by injunction, restrain the complainant from claiming the same, or from insisting thereon, either in his defence to a suit at law, or otherwise. (1 *Sch. & Lef.* 441. 1 *Ves. sen.* 56. *Mitford*, 4 *Lond. ed.* 197.) Hence arose the practice, for the borrower, when he applied to this court for relief against the usurious premium, which he had paid or agreed

to pay upon the loan, to waive the forfeiture, by offering or submitting to pay the amount actually loaned, with legal interest thereon.    This offer was necessary in all cases, before the complainant was entitled to an answer, or to an injunction to stay proceedings at law ; whether the relief prayed for was a mere discovery in aid of a defence at law upon the usurious contract, or a decree declaring the contract or security void as to the excess.    Otherwise, the complainant, after obtaining a discovery by the answer of the defendant, might dismiss his bill here, and might use that answer in the suit at law, or otherwise, in such a manner as to deprive the defendant of the whole debt.    When, therefore, the legislature provided, in the first clause of the section of the revised statutes which is now under consideration, that it should not be necessary for the complainant to pay or offer to pay any interest whatever on the sum or thing loaned, it was only saying, in other words, that the defendant should be compelled to answer on oath as to the usury, although such answer might have the effect to deprive him of interest on the loan.    But if the object of the legislature had been to compel the defendant to make a disclosure which might deprive him of the principal sum also, they would have gone further and would have said that it should not be necessary for the complainant to pay, or to offer to pay, either principal or interest, to entitle him either to a discovery, or relief.    I am satisfied, therefore, that the complainant, under this statute, is not entitled to call upon the defendant to answer on oath as to the usury, unless he pays into court, or offers to pay, the amount of the principal sum actually loaned, or so much thereof as remains unpaid. And even this offer would not be sufficient in a case where other persons than the complainant might take advantage of the discovery thus obtained, and might enforce the forfeiture against the defendant.    In the case under consideration, as it is alleged that the actual borrower is insolvent, it is perhaps of very little consequence that he is made a defendant instead of a complainant ; and that the offer of the present complainant, if made, would not prevent R. L. Livingston from setting up the usury against his co-defendant, and using the answer of Harris against himself, to establish that fact.    But

1832.

Livingston
v.
Harris.

if the circumstances of the parties were reversed, so that the co-defendant was in fact the only responsible person, or if there was any doubt as to the ability of the complainant to make good the offer contained in the bill, the court could not, upon principle, compel the defendant to make a discovery which would discharge a third person from his liability to pay the money actually loaned. In such a case the complainant should offer to bring the amount into court, or should be required to give security to pay the sum actually due for principal, agreeably to the offer contained in his bill, when that amount should be ascertained.

The construction of the last clause of this eighth section does not necessarily come under consideration on the present application ; except for the purpose of ascertaining whether it was intended to compel the defendant to put in an answer which might subject him to the loss of his whole debt. My first impression, upon reading the whole section together, soon after the passage of this chapter of the revised statutes, in 1827, was that the legislature intended merely to deprive the lender of the interest on his loan ; and to prevent the necessity of the complainant's bringing into court the principal admitted to be due, in the first instance, instead of leaving the payment to be provided for in the final decree. Upon further examination of the subject, however, I am inclined to think they intended to go further, and to alter the principles upon which this court sets aside usurious contracts and securities where the complainant has the means of establishing the usury without resorting to the oath of the defendant ; so as to reach that class of cases where the nature of the security is such as to compel the borrower to resort to this court for relief. Although such a change in the law which previously existed, may be considered inconsistent with the spirit of the age, which certainly is not in favor of an extension of the restraints of the usury laws, it was perfectly consistent with the determination of the legislature to reject the modifications of those laws which had been proposed by the revisors. If the restrictions were to be continued, it was right, in principle, to insert a provision in the statute which should render it impossible for the lender to obtain any species of security that could

1832.

Livingston
v.
Harris.

be made effectual against the borrower or his property, where the fact of the violation of the law could be established in the usual mode of proving facts in courts of justice. I can readily conceive that an enlightened legislature of this state might be willing to effect this object by abolishing the technical rule which forbids the borrower from applying to this court for relief except upon the condition of paying the money loaned, although I am unwilling to suppose they intended to enable him to enforce the forfeiture against a defendant, by compelling the latter either to commit perjury or to criminate himself and forfeit his debt.

If this is the correct construction of these new provisions introduced into the revised statutes, there is no difficulty whatever in carrying them into effect according to the settled practice of this court in other similar cases. Where the complainant wishes to examine the defendant, as a witness against himself, to establish the fact of usury, he must in his bill offer to pay the amount of principal actually due or loaned. And if the answer of the defendant can be used by a third person to avoid the security, or to relieve himself from responsibility for that amount, the complainant must also bring into court the amount claimed to be due, or must give such security as the court may direct, for the payment of the principal sum according to the offer in his bill, whenever that sum shall have been ascertained. If there is no such offer in the complainant's bill, and the subject is not of equitable jurisdiction, otherwise than for the purposes of a discovery and an injunction to stay proceedings at law, the defendant may demur both as to the discovery and relief, on the ground that the complainant's remedy, if any, is at law. Where a case of equity is made out by the bill which renders it necessary for the complainant to come into this court for relief, he may waive an answer from the defendant on oath, and may proceed to establish the facts by proof, as in other cases. Where an answer on oath is not waived, the defendant may demur to so much of the discovery as relates to the charge of usury, and may answer as to the relief, as in other cases where the complainant is entitled to relief, but where the defendant cannot

make a discovery as to the facts upon which that relief is asked, without subjecting himself to a criminal prosecution, or a penalty; leaving the complainant to establish the allegation of usury, if he can, by proof. (2 *Ves. sen.* 246. 1 *Eq. Cas. Abr.* 131, *pl.* 11. *Prec. in Ch.* 214.) The defendant in such a case may also in his answer insist that he is not bound to make any discovery which may subject himself to a forfeiture; this being an exception to the general rule that the defendant cannot, by answer, object to answer as to any particular matter of which a discovery is sought by the bill. (*Lube's Eq. Pl.* 324. *Mitford,* 4 *Lond. ed.* 307, note h. 4 *John. Ch. Rep.* 432.) In the present case the complainant had a perfect defence at law, if he could establish the fact of usury without a discovery from the defendant Harris. And as he has not offered to pay what is admitted to have been actually loaned, he is not entitled either to a discovery or to relief in this court.

Upon the argument of this motion, the complainant's counsel asked to have the injunction retained, to enable him to apply for leave to amend his bill, if the court should be of opinion that it was defective in not offering to waive the forfeiture. It was suggested, however, on the other side, that the responsibility of the complainant was doubtful; and that the sureties taken by the master, upon granting the injunction, were insufficient to ensure the payment of the debt. As the complainant in this case is not the only person who might avail himself of the forfeiture if the usury were admitted by the answer, it is at least doubtful whether the amendment proposed would be sufficient to sustain the injunction, or to entitle the complainant to an answer. Neither have I thought it necessary at this time to examine the question whether the statute applies to the case of a bill filed by the surety only, and where the borrower is made a party defendant instead of being joined as a complainant in the suit.

The injunction in this case having been improperly granted, it must be dissolved, with the costs of this application. But such dissolution must be without prejudice to the right of the complainant to apply to the court, upon the usual notice to the adverse party, for leave to amend the bill by inserting therein an offer to pay the amount loaned with legal interest thereon,

or an offer to pay the principal only, as he may be advised, and to renew the injunction, upon such terms and conditions as the complainant may be advised to propose. Upon the hearing of that application, the several questions which are material to a decision thereof, but which are not necessarily embraced in the decision of the present motion, will be more deliberately examined.