### Topping v. Van Pelt and another.

A BOND and mortgage was taken, as alleged, upon gross usury, and was assigned for a valuable consideration, without notice of the taint. The assignee commenced a suit at law in the assignor's name, and obtained judgment by default at the trial. Execution was returned unsatisfied.

He then proceeded to advertise the premises for sale under the mortgage, and pursuant to the statute. The mortgagor filed his bill for relief, and to stay such proceedings against the assignor and assignee.

*Held*, first, that the assignor was not a proper party to the suit. Generally speaking, where a person can be examined as a witness, he should not be made a party. Exceptions to this rule. If in the principle case the suit had been to enjoin the action at law, the assignor would have been a proper party, being plaintiff on the record.

A party to a negotiable instrument shall not be allowed to impeach it for usury, where it is in the hands of a *bona fide* holder. But it seems that he is a good witness in other cases, if not interested.

Where a vendor can be examined as a witness, his declarations, even before the sale, are not competent evidence.

Under the act of May 15, 1837, the provision that the act shall not affect such paper as has been made and transferred previous to the time it shall take effect, refers to negotiable paper previously referred to. Negotiable paper is put by the act on the same footing when in the hands of a *bona fide* holder, as other securities.

*Held*, that the statute of 1837 does not extend the power of this court beyond that of 1830, where judgments have been obtained at law, even if upon a default. Such a judgment must be treated as a hostile judgment. The court will only interfere in the cases in which, upon its general principles, it will interfere with a judgment; or upon its peculiar principle in cases of usury, of payment of the debt justly due.

The former law, the Revised Statutes, and the provisions of the act of 1837, examined.

ON the 7th of February, 1837, a bond and mortgage was executed by the complainant, to the defendant Van Pelt, to secure payment of the sum of $425. On the 3d of February, 1838, the securities were assigned by Van Pelt to the defendant Southworth. On the 14th of April,

Aug. 7, 13.

1838, Southworth caused a suit at law to be instituted on the bond, in the name of Van Pelt, against the complainant. A plea of *non est factum* was put in, and an inquest taken at the trial, the defendant not appearing. A judgment was afterwards duly entered in October term, 1838.

The judgment record has been produced, and is competent evidence. It does not however show that the notice mentioned in the answer, and which contained the facts of alleged usury, was given. The answer is no evidence of this, and it must be treated as not in the case.

After obtaining the judgment, the defendant proceeded to advertise the property under the statute, pursuant to the power in the mortgage. Upon this, the mortgagor filed his bill in April, 1839, alleging usury in the instruments, and seeking to stay the sale, and delivery of the securities, and general relief.

*Mr. Mack*, for the complainant.

*Mr. Ben Johnson*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR:—The allegations of the bill present this enormous case of usury—a loan of three hundred dollars, upon receiving a bond and mortgage for four hundred and twenty-five, with interest from the date. It is distinctly proven by the complainant's own witnesses, that the sum of $350 was actually paid to him at the time of the execution of the bond and mortgage; and the thought immediately arises, how it has happened that the complainant has positively sworn that the sum was but three hundred dollars. He does not start with a favorable case, when he has made so great an error, if not misstatement.

The defendant Southworth is the present holder of the bond and mortgage under an assignment. The answer of his co-defendant, the mortgagee, is neither evidence for him, nor against him. The question then, so much discussed at the bar as to the effect of this answer, whether

responsive or not, cannot arise. The defendant Southworth avers, that he purchased the securities in the full belief that they were valid, without any knowledge or information of any usury in them. Van Pelt answering for himself, states the consideration to have been the $350 cash, and $75 money lent and paid.

The assignment by Van Pelt to Southworth, was made on the 3d of February, 1838. The suit at law on the bond, was in the name of Van Pelt, and has proceeded to judgment by default at the trial. The advertisement of the premises is in the name of Southworth, the assignee.

I think that Van Pelt was not a proper party to this suit. He had assigned his whole interest in the bond and mortgage, to the defendant Southworth. (*Norish* v. *Marshall*, 5 *Mad. Rep.* 478. *Whitney* v. *McKinney*, 7 *Johns. C. R.* 93.)

Generally speaking, wherever a person may be examined as a witness, he ought not to be made a party. I say generally speaking, because there are exceptions; as for example, where a party is interested in one branch of a cause, yet a competent and disinterested witness as to other branches; and also in the cases in which a bankrupt is made a party to aid the plaintiff in obtaining proof, although his answer is not evidence against the assignees. (See as to the rule, *How* v. *Best*, 5 *Mad. Rep.* 19. *Trenton* v. *Hughes*, 7 *Vesey*, 287. *Whitworth* v. *Davis*, 1 *V. & B.* 549; and as to the exceptions, *Bradley* v. *Root*, 5 *Paige*, 636. *Lord Redesdale*, 161. *Whitworth* v. *Davis*, 1 *Ves. & Bea.* 548. *Lloyd* v. *Lander*, 5 *Mad.* 282.) The propriety of the exception in cases of bankruptcy, has been much questioned. (See *Calvert on Parties*, 22.)

It appears to me that it is only on the principle of the practice in bankruptcy, viz., that the answer may guide to proof, that the case of *Brace* v. *Harrington*, (2 *Atk.* 235,) can be supported. Certainly the answer when obtained, would not have been evidence.

It has been said however, " that in most cases, the person " having the legal title in the subject, must be a party, " though he has no beneficial interest, that the legal right

" may be bound by the decree. Thus, if a bond or pay-
" ment be assigned, the assignor as well as the assignee
" must be made a party, for the legal right of action re-
" mains in the assignor." (*Lord Redesdale*, 179, 4th ed.)
This doctrine has received repeated confirmation in the
courts of Kentucky. But in all the cases, the bill has
been by the assignee, and the rule is thus stated in one of
them ; " Where an assignment of a chose in action trans-
" fers to the assignee only an equity, the assignor must be
" a party to the suit founded on the thing assigned, be-
" cause the legal title is in him." (*Craig* v. *Johnson*, 3
*J. J. Marshall*, 573.   *Pemberton* v. *Riddle, ibid.* 401.)

In the learned opinion of Justice Story, in *Trecothick* v.
*Austin*, (4 *Mason*, 16,) it was held that the assignor of a
chose in action was not a necessary party where the suit
is by the assignee, and the assignment is absolute.

In *Miller* v. *Bear*, (3 *Paige*, 466,) Chancellor Wal-
worth said, " where the assignee has the whole equitable
" interest in himself, so that nothing remains to be done
" by the assignor who has parted with his entire interest
" in the property both at law and in equity, I see no
" benefit which can result to any person by making him
" a party."

The position of Lord Redesdale chiefly rests upon the
case of *Cathcart* v. *Lewis*, (1 *Vesey*, 463,) in which an-
other ground was sufficient to dispose of the demurrer.
But in *Brace* v. *Harrington*, (2 *Atk.* 235,) Lord Hard-
wicke said, that it was not necessary in every case of as-
signments where all the equitable interest is assigned over,
to make a person who has the legal interest a party ; but
if an obligee has assigned over a bond, and a presumption
of its being satisfied arises from the great length of time,
the representative of the obligee must be a party, because
it is possible the obligee himself may have been paid, and
it may be necessary to have an answer to that particular
from him or his representatives.  See also *Blake* v. *Jones*,
(2 *Anst.* 651.)

If a bill had been filed to enjoin the action upon the
bond which was brought in the name of the assignor, he

must have been a party. The true distinction will be found in the cases of *Coale* v. *Mildred*, 3 *Harr. & Johns.* 278, and *Craig* v. *Whip*, 1 *Dana*, 375, viz., where the suit at law is in the name of the assignor of a chose in action— or the assignee of a promissory note. But under our decisions as to the protection given at law to an assignee of a chose in action, I doubt whether it is necessary to make the assignor a party in a case to set aside the security, when no suit at law has been instituted. ( *Wheeler* v. *Wheeler*, 9 *Cowen*, 34.) I apprehend the court of law would not allow the assignee to proceed in the name of the assignor after he had litigated his rights in this court to a decree. At any rate this court would enjoin the proceedings.

Be this as it may the present case is different. The proceeding is not in the name of the assignor, but is an advertisement of the assignee in his own name, of a sale of the premises under the statute. Beyond a doubt this proceeding may thus be taken by him, as well as a bill of foreclosure be filed by him. See 2 *R. S.* 546.

I therefore do not consider the defendant Van Pelt a proper party to the suit. It is clear that he could have been a witness for the complainant as well as for the defendant Southworth. Either could have called him.

I take the rule to be that a party to an instrument, who has even transferred it for good consideration is a competent witness to impeach it, where he is not interested, or is released. An exception with regard to negotiable paper prevails in our own country in many states, and has been adopted in the Supreme Court of the United States. ( *Pachard* v. *Richardson*, 17 *Mass.* 122. See 4 *Greenleaf*, 191. 9 *S. & R.* 236. 2 *Binney*, 165. 2 *Hawkes*, 235. *Bank of United States* v. *Dun*, 6 *Peters*, 51. *Jordaine* v. *Lashbrooke*, 7 *T. R.* 601. *Carleton* v. *Wicker*, 5 *N. H. Rep.* 197.) In our own state there appears to be this distinction ; that a party even to negotiable paper is a good witness where the suit is between the parties to the usury, but not if the paper is in the hands of a *bona fide* holder. (See *Winton* v. *Saider*, 3 *Johns. C.* 185. *Stafford* v. *Rice*,

5 *Cowen*, 23.  *Bank of Utica* v. *Hillard*, 5 *Cowen*, 155. *Powell* v. *Waters*, 8 *Cowen*, 670.)  The defendant could not have objected on the ground that a defence successful in this suit ought to avail Van Pelt in another upon the bond, because a judgment had already been obtained and his liability fixed.  No decision in this suit could avail him to review the judgment at law.  (*Fanning* v. *Dunham*, 5 *Johns. C. R.* 136.  See 7 *Paige*, 16.)

There can be no doubt of the competency of Van Pelt as a witness for the complainant.

Again, he had given no guaranty of the securities, nor was in any way responsible in case of the inability of the assignee to recover upon them.  He had no interest to support the mortgage.  (*Pond* v. *Hartwell*, 17 *Pick.* 207. 6 *Conn. Rep.* 494.  6 *Binney*, 500.)  There was no implied warranty of the title as upon a sale of goods ; (*Hall* v. *Smith*, 6 *Greenleaf*, 416,) nor any liability to refund the money.  (*Lowrey* v. *Summers*, 7 *Halsted*, 240.) Hence I think he was also a good witness for the other defendant who could have had an order to examine him under the 73d rule, and his deposition would have been competent evidence.

Then as the case stands it must be disposed of as relates to this point of usury, upon the testimony actually produced, and disregarding Van Pelt's answer.  In the first place it is distinctly proven that the actual cash paid down at the time of the execution of the instruments was three hundred and fifty dollars.  And it deserves notice that nothing at the interview which then took place was said of any debt by Van Pelt to the complainant, or of any other consideration of the mortgage.

Again, Topping states that when the money was counted, he said it was too little, and the complainant asked Van Pelt whether he would not let him have more.  He also says that afterwards at Holt's Hotel, Van Pelt admitted that he had received more than legal interest, saying that he was to get fifty dollars for a loan of three hundred.

Nelson states that during the ride home in a sleigh, a question was put to Van Pelt, whether, if certain money

was got from Albany, he would throw off any part of the usury. He answered he would do what was right. The testimony of Spery is very unimportant, and besides relates to declarations of Van Pelt made after the transfer to Southworth.

On the other side is the testimony of Walter Van Pelt and of Paul Dowe. The former proves nothing, but the fact of Topping coming on some occasions to his sons, apparently to get money.

The evidence of the latter is of more consequence. It tends certainly to establish an admission of the complainant made before the mortgage was given, that he owed the defendant the better part of $100. Although Dowe thinks that the interview with the complainant when he applied for $400 was two years prior to his examination, which would be after the mortgage was given, yet certain facts which he states, such as that he afterwards heard that the complainant had got the money of Van Pelt induces the conclusion that it was in the previous year. He says it took place in the summer or fall, two or three years before his examination.

It is, however, urged that if it was in the summer or fall of 1836, the complainant had no deed for the property, and Dowe says, he spoke of the farm as having bought it of his brother. Mr. Johnson, however, states that there was a payment made in September, 1836, of the sum of $19 36, by Benjamin Topping; and Topping says he had an article for the land from Johnson, and had agreed to let the complainant have it. The date of this agreement does not appear; but if it was in the summer or fall of 1836, this objection to Dowe's evidence would be obviated.

This is all the testimony before me upon the point of usury, and it leaves it in a most unsatisfactory state. I confess the evidence of Topping appears so exactly to have been squared to the case made by the bill, which is proven to be widely different from the actual case as the complainant's witnesses make it, that I cannot but distrust him. He makes the admission to be of a bonus of $50, for the loan of $300—precisely treading in the allegation

of the bill, and asserted to have been made on the same day with the transaction itself. This is highly suspicious. Besides the testimony throws some shade at least over his credibility. I should be unwilling to decree these instruments tainted, upon such slight testimony as his statements, even coupled with Nelson's.

But there is a stronger ground. Van Pelt, stands in the same situation as a vendor of personal property. I have already shown that he was a competent witness for the complainant. It is perfectly well settled, that where such a vendor can be examined, his declarations, even where made before the sale, are not evidence against the vendee. (*Whitaker* v. *Brown*, 8 *Wendell*, 490. *Mund* v. *West*, 7 *Cowen*, 752. *Sprague* v. *Kneeland*, 12 *Wendell*, 161.)

Another objection to this bill, presents a very important question.

The defendant when sued at law, upon the bond, puts in the plea of the general issue, and makes default at the trial. A judgment is then docketted against him. The question is, whether the opportunity having been given him of setting up the defence of usury at law to this action on the bond, shall bar him of availing himself of it in the present proceedings.

The question may be considered as if the defendant Southworth was now foreclosing in this court. I am inclined to think that the complainant, if entitled to defend himself upon a bill for that purpose, may sustain the present bill.

The present is a case in which, if there had been no suit at law, the decision in *Livingston* v. *Harris*, (3 *Paige*, 528. 11 *Wendell*, 239,) would apply. A proceeding is taken under the statute to foreclose the mortgage.

If therefore, the Revised Statutes of 1830 apply, the only question would be, whether the omission at law bars the remedy here.

But before this point is examined, the effect of the act of May 15th, 1837, must be noticed. It will be recollected, that the bond and mortgage in this case were given in February, 1837, and assigned in February, 1838. In April,

1838, the suit at law was commenced, and judgment obtained in October of that year. The act of 1837, went into effect on the 1st of July, of that year.

By that act, the fifth section of the former is so amended, as to repeal the clause saving negotiable paper in the hands of a *bona fide* holder without notice, and substituting the provision : " That this act shall not affect such paper as " has been made and transferred previous to the time it " shall take effect."

I can hardly doubt that in this clause the term *negotiable* has been by accident omitted. That the legislature meant to abolish the distinction which under the Revised Statutes existed, between negotiable paper and other securities, with the qualification that such paper if made or transferred before the 1st of July, 1837, should be exempt from the act. But if the construction could be adopted, that a bond and mortgage was paper within this clause, it would not meet the present case. The transfer did not take place until after the act went into effect.

The important question is, whether the fourth section of that statute applies to a case of a judgment recovered adversely after plea, though by default.

I do not know of a case bearing upon the subject except that of *Campbell* v. *Morrison,* (7 *Paige,* 161,) in which it was held that the statute did not there apply because the judgment at law had been recovered before it went into effect ; and before that time, the party could not come here for a discovery and injunction, without paying the money actually lent, where he had a perfect defence at law, and had neglected it, except in some special cases.

In interpreting the fourth section, we must advert to what was the existing law. The judicial construction of the eighth section of the Revised Statutes had settled that where a party came here for *discovery* of usury alone, he must offer payment of the principal, though not of the interest ; and that when he came for relief against instruments or proceedings where an opportunity of defence was not given at law, (such as where a judgment was had upon a bond and warrant, or where the party was proceed-

ing to foreclose under the statute,) he need not offer or pay the principal, or any part of it. But in other cases where this court was applied to for relief, such as to stay proceedings at law, and declare the instrument void, it could not be done except on the ancient terms of paying the amount due. And another doctrine of the court was left in its full force, that where a judgment at law had been obtained upon trial or by default, this court would not interpose to let in the defence of usury, except in very special cases, such generally as affected the conscience of the plaintiff with surprise or deceit, or some reason from the state of record which prevented justice. (*Livingston* v. *Harris*, 3 *Paige*, 528. 11 *Wendell*, 329. *Campbell* v. *Morrison*, 7 *Paige*, 161. *Norton* v. *Woods*, 5 *Paige*, 250. *Thompson* v. *Berry*, 3 *Johns. C. R.* 399.

The statute in question provides, that upon a bill filed by a borrower on usurious interest for discovery, or relief, or both, he need not pay or offer either interest or principal. This is the first clause of the fourth section, and its apparent object is fulfilled by holding that it was meant to alter the law as declared in *Livingston* v. *Harris ; first*, where a discovery only was sought, by dispensing with the payment of the *principal ; next*, where a relief, or both discovery and relief were sought, by dispensing with the payment of *interest*.

The eighth section was open to the construction, that where relief was sought in the cases judicially decided to be within it, such as bonds and warrants, the interest must be paid, although not the principal. The chancellor, in the order made in *Livingston* v. *Harris*, probably had this in his mind. (3 *Paige*, 538.) The summary of the provisions in the marginal note to the eighth section will explain these views. The statute as interpreted, read :—A borrower filing a bill merely for *discovery* of usury, need not pay any interest, but must pay the principal. A borrower filing a bill for relief where he had no opportunity of defence at law, need not pay the principal, but must pay the interest. Under this construction the last clause of the eighth section provided for a different case

from the first clause ; and although I see no reason whatever in the distinction I have noticed, viz: in requiring payment of interest and not of principal—I think it existed in the statute, and must be regarded. The last clause of the fourth section of the act of 1837, is exactly the same as that of the 8th section, with the addition of the words, *or interest.* As it now stands it is wholly superfluous. The previous clause, especially in conjunction with the fifth section, provides for every case, and thoroughly effectuates the purposes of the act, without this last clause.

What reason then is there for extending the present act beyond that of 1830, as respects judgments hostilely obtained ? I find none in the fourth section, because I find it plainly aimed at a point of construction of a former law, and because I see no reason in language or intention, to enlarge its operation.

Nor does the fifth section of the act extend its bearing. It refers distinctly to those bills which may be filed under the preceding section. It gives the authority to this court to declare the security void, to enjoin a prosecution thereon, and to order them to be surrendered or cancelled. This power resided in the court before. It exercised such power without terms, if the usury was established at law, and upon terms, if the party was driven here. (*Moore v. McKay*, 2 *Molloy*, 137.) The section then only carries out the principle of the act, in directing a cancelment in all cases without terms. But it is in all cases in which within the act the relief is to be given. *Again*, a strong argument may be built up, that this section does not include a hostile judgment. It enumerates bonds, notes, assurances, conveyances, contracts, securities and evidences of debt, *taken or received* in violation of the act, and corresponds with the enumeration in the fifth section of the former act as enumerated. Under the statute of James, it was held that a judgment was not a contract or assurance, but was *redditum in invitum*. This was applied to a judgment by confession. (*Middleton v. Hill, Cro. Eliz.* 588. *Golds,* b. 128. *Rowe v. Billaseys,* 1 *ibid.* 182. See also *Berring-*

1840.

Topping
v.
Van Pelt and
another.

*ton* v. *Evans*, 1 *Younge's Rep.* 276.) In *Grums* v. *Shrieves*, (6 *Monroe's Rep.* 553,) it was held that usury might be averred against all private agreements, bonds, deeds and writings: even a fine levied upon the usurious contract, may be avoided. To the same effect is *Fermer's case*, (3 *Coke*, 80.)

Subsequent authorities in England, however, shook the application of this construction to judgments by confession, by permitting a motion to the court of law to vacate the judgment, and let in the defence. The course of these decisions is traced by Chancellor Kent, in *Fanning* v. *Dunham*, (5 *Johns. C. R.* 36.) He shows a similar practice here, but concludes that the supreme court had adopted a different rule, and would not sanction such a motion. (See page 42.) There was a subsequent case in 1823, (1 *Cowen*, 35,) in which however the court granted it. I do not find any later decisions; but in *Livingston* v. *Harris*, the chief justice speaks as if in such a case the party was compelled to resort to a court of equity. (11 *Wendell*, 525.)

But whatever may be the rule in a court of law, the distinction between a judgment by bond and warrant, and one had upon a trial, is marked. The former constitutes part of the contract and security—is given at the time, and is "the deceitful engine," for effecting the usury. The other is no part of the contract; must be rendered after defence, or after the full opportunity for defence.

It may be urged that it is a security or an evidence of debt. In a broad sense a judgment is such. But the phrase of the section requires that *it has been taken or received* in violation of the act. This implies a transfer and acceptance; and it confirms the view I have taken, that the statute comprehends every thing which by a union of the wills of both parties is had or acquired, and comprises nothing more. A hostile judgment is not obtained by mutual consent.

The third section of the act may be adverted to. It corresponds exactly with the sixth section of the Revised Statutes, except that the defendant may be compelled to

answer on oath whether the bill is for discovery or relief. In the former it was limited to a bill for discovery, the forfeiture being only the interest.

I pass over the serious question, whether this section, coupled with the forfeiture prescribed by the fifth, and the punishment for a crime inflicted by the sixth, is constitutional. (See the chancellor's opinion, 3 *Paige*, 534. 11 *Wendell*, 335.) The defendant has in this case answered. But at least the section cannot enlarge the jurisdiction as to relief. On the contrary it is restricted to cases in which, by the fair construction of the whole act, bills may be filed.

My conclusion is, that no bill is authorized to be filed by the statute of 1837, for relief on the ground of usury after a judgment *in invitum*, which was not sustainable under the statute of 1830, or by virtue of the general principles of the court irrespective of any statute.

Now under the former act it was settled, that to get relief in any case, except in those special instances pointed out, payment must be made of the debt justly due. The present bill does not exhibit one of such exceptions.

What then is the doctrine of the court? In general, that which applies to every other case of its interference with a judgment. There must have been fraud or accident, or improper conduct of the opposite party—that the applicant was ignorant of the defence at the time—or that it could not have been received at the trial. (*Foster* v. *Wood*, 6 *Johns. C. R.* 90.)

In cases directly in point, they either show the entire rejection of the suit in this court; or its admission only on the ground of paying the amount legally due. And when the bill is entertained, even upon this condition, there must be some strong extraneous equity to induce the court to relieve upon it. Every case cited by Chancellor Kent, in *Fanning* v. *Dunham*, respecting the interference of the court, except that of *Scott* v. *Nesbit*, was a case of a judgment by confession. *Scott* v. *Nesbit*, (2 *Br. C. R.* 641. 2 *Cox's Cas.* 183,) was a case of a peculiar character and involving a material principle. Executors had been sued

upon a bond debt of the testator, and judgment was recovered against them for assets, *quando acciderent.* It does not appear whether the judgment was by confession or not. A creditor's bill was filed, and, as I gather, after the judgment. Under the decree in that suit, the judgment creditors went in before the master, under an order made in a suit which they had instituted. The question was, as to usury in the bond on which the judgment was recovered. The ground taken by Mr. Mansfield and Mr. Stratford was this : (p. 646.) " It is said here is a judg-" ment which cannot be impeached upon the head of usury, " because the executors might have pleaded the usury at " law ; but when a bill was filed by creditors as this is, " they have a right to impeach every debt founded on a " transaction void at law. The executors not having " pleaded the usurious contract at law, does not preclude " the creditors from making the objection here."

Lord Thurlow held that the creditors might do before the master all that they could have done by a bill filed by them against the judgment creditors ; but that by a bill they could displace the judgment only upon doing what was just—the judgment must stand for the money due and legal interest.

In *Teague* v. *Russell,* (2 *Stewart,* 240,) it was held that where the party had omitted to plead usury at law, and showed no excuse for his neglect, he could have no relief in equity.

In *Case* v. *Davis,* (5 *Monroe's Rep.,* 393,) it was laid down that usury was cognizable in both courts ; and with courts of concurrent jurisdiction the rule is, that the decision of the one is, upon the same matter, and between the same parties, conclusive upon the other.

In *Berry* v. *Thompson,* (3 *Johns. C. R.* 399,) Van Buren, who had suffered a verdict to go against him at law, when he knew of the defence of usury, was refused relief.

In *Norton* v. *Woods,* (5 *Paige,* 250,) where the nominal plaintiff at law who had no interest in the suit was the only witness to prove the defence, a bill was sustained

after judgment. His answer to a bill of discovery would not of course have been evidence. And no relief could be had except in this court, where he could have been examined. A satisfactory cause for not first resorting to this court was given. And in *Campbell v. Morrison*, (7 *Paige*, 161,) the complainant was an accommodation endorser, and had not been informed of the defence of usury until after an inquest by default. Relief was given him on terms. See also, *West v. Beanes*, (3 *Harr. & Johns*. 568.)

In the Duchess of Kingston's case, Lord C. J. De Grey, (20 *Howel's St. Trials*, 538,) said, " Two deductions " seemed to follow as generally true ; first, that the judg- " ment of a court of concurrent jurisdiction, directly upon " the point is as a plea in bar, or as evidence conclusive be- " tween the same parties upon the same matter directly in " question in another court; *secondly*, that the judgment of " a court of exclusive jurisdiction directly upon the point, " is in like manner conclusive upon the same matter coming " incidentally in question in another court between the " same parties, for a different purpose."

It at first struck me that the fact of the present proceeding being upon the mortgage, and the former upon the bond, might make a difference. But upon consideration I am satis- fied that there is no just reason for a distinction. It would be a singular anomaly if the supreme court, for example, should hold a bond void for usury, and this court sustain a bill to foreclose a mortgage. It would be a direct violation of the rule in the Duchess of Kingston's case to permit this, where the question had been actually passed upon by the supreme court ; nor does the fact of its being a judgment by default justify a different rule. That the actual debt should stand secured by a judgment with all its remedies, and the collateral security be avoided, would be a judicial contradiction. But carry the case further. Suppose the mortgage on this bill set aside, what would impede the plaintiff at law from selling this very property under his judgment ? Then if this court is applied to, it could interfere with the judgment only upon its general prin-

ciples, and these have never sanctioned such an interference in a case of usury, or any other case where there does not exist the slightest excuse for omitting the defence at law.

It appears to me that there is no ground whatever to sustain this bill. It must be dismissed with costs as to both the defendants. But as the objection ought to have been·taken by the defendant Van Pelt, by demurrer, he must be allowed only such costs as would be taxable upon a demurrer.