## COLE *vs.* SAVAGE and others.

A purchaser of premises incumbered by an usurious mortgage, cannot file a bill in this court, either for discovery or relief, to set aside the mortgage as usurious without paying, or offering to pay, the amount actually loaned and secured by the mortgage, with interest.

The 8th section of the Revised Statutes, in relation to the interest of money, and the fourth section of the "act to prevent usury," passed May 15, 1837, apply only to "borrowers" and a subsequent purchaser of mortgaged premises, is not a "borrower" within the meaning of either act, and such subsequent purchaser when he comes into chancery, to set aside a previous mortgage on the ground of

usury, must abide by the ancient rule of the court, and pay the money loaned before he can have either discovery or relief.

The 4th section of the "act to prevent usury" passed May 15, 1837, only varies from the 8th section of the Revised Statutes in relation to the interest of money, in requiring the court of chancery to entertain bills for discovery, as well as relief without any payment or deposit by the complainant, when such complainant is a "borrower." Neither act applies to any other class of complainants except those who can be legally designated as "borrowers."

The 3d section of the "act to prevent usury" has no greater scope or effect than the 6th section of the Revised Statutes in relation to the interest of money, and neither of them prescribe the terms upon which relief shall be given by the court of chancery in usury cases.

A Bill filed by a subsequent purchaser of mortgaged premises to set aside the previous mortgage on account of usury, and in the event the mortgage should not be declared usurious, to obtain a reduction of the amount claimed to be due upon a foreclosure by advertisement, cannot be sustained without the complainant pays, or offers to pay, the amount actually loaned.

THIS bill is filed by the complainant to set aside and cancel a mortgage executed by David S. Cole, to Daniel M. Chittenden, in 1834.

The bill alleges the mortgage to have been given upon an usurious and corrupt consideration. The complainant is a grantee, or purchaser of the mortgaged premises. The mortgagee, Chittenden, is dead, and the defendants are his personal representatives, and as such, have proceeded to foreclose the mortgage by advertisement under the statute. The bill is filed to restrain such proceedings. One allegation is as follows, "and your orator is further advised and respectfully insists, that even if the said " mortgage should not be pronounced usurious, that no " greater sum can be claimed by virtue thereof, than " the amount actually advanced by said Chittenden " to the said David S. Cole, and interest after deducting the payments that, from time to time, have

" been made and received by said Chittenden as " aforesaid."

The special prayer of the bill is, that the mortgage may be cancelled, and proceedings to advertise be restrained with the general prayer "that your " orator may have such farther relief, or may have " such other relief as the nature of the case may re- " quire and shall be agreeable to equity."

To this bill there is a general demurrer, and the cause comes on for argument upon the demurrer.

*A. Gardiner,* for complainant.

*S. Mathews and O. Hastings,* for defendants.

THE VICE CHANCELLOR. This case has been once before the court upon a motion to dissolve the injunction upon the bill alone, (*ante,* page 50.) That motion was denied; and if the proceedings had gone on under that decision, without amendment, the final hearing would only have determined the amount which the defendants were entitled to receive, and the complainant bound to pay, as the true sum due upon the mortgage. This could have worked no injury to any party—any injury, I mean, in the eye of an equity court. The question of usury would have been excluded, and the mortgage could not have been wholly avoided. The complainant would have been bound to pay and the defendants would have been entitled to receive the actual amount advanced by their testator, with lawful interest, deducting all payments, and no more. This result would have been equitable and just to all parties. But the case now assumes a new aspect. The complainant has amended his bill so as by the admission of all the

parties, to make a sufficient allegation of usury. The
frame of the bill is principally to avoid the mortgage
on this ground, and on this ground alone. This is
the special prayer of the bill. It is filed by a pur-
chaser of the mortgaged premises, with a full know-
ledge of the mortgage, and against the representa-
tions of the mortgagee. The demurrer raises grave
and important questions under our legislative enact-
ments in relation to usury, the bearing and effect of
which it becomes the duty of the court to examine
and pass upon.

Before the Revised Statutes, the legislative enact-
ments declared, as they do now, that every usurious
contract and every instrument of whatever kind or
description, taken as evidence of such contract, were
absolutely void. Then, as now, the borrower or
any other person proceeded against upon such usu-
rious contract, had only to show by proof, that there
was usury, and the recovery could be defeated both
as to the usurious excess and the sum actually loa-
ned. The contract and securities were void, and the
defence was perfect at law, if the defendant had
proofs sufficient to substantiate the usury. But pre-
vious to the Revised Statutes, if the defendant had
occasion for any reason to invoke the aid of a court of
equity to show the usury, he was met by the maxim
that "He who asks equity, must do equity;" and a
court of Chancery would afford such applicant no
relief until he paid the other party the amount which
was in justice and equity due to him, viz. the amount
loaned, with the lawful interest thereon. A party
coming into this court as a complainant to set aside
a contract for usury, must make such payment—offer
to make such payment, or to bring the money into

court, or his bill would be demurrable. This was the settled and well recognized law of this court, in relation to such questions, previous to the passage of the Revised Statutes.

The legislature, for the evident purpose of modifying or qualifying this rule, in the revision of the statutes, (Vol. 1, p. 761, Sec. 8, new ed.) enacted that " whenever any borrower of any money, goods, " or things in action, shall file a bill in Chancery for " a discovery of the money, goods, or things in ac- " tion, taken or received in violation of either of the " foregoing provisions, it shall not be necessary for " him to pay or offer to pay any interest whatever " on the sum or thing loaned ; nor shall any court of " equity require or compel the payment or deposit of " the principal sum or any part thereof, as a condi- " tion of granting relief to the borrower, in any case " of an usurious loan forbidden by this chapter."

Under this statute, the court of Chancery have decided that a complainant, even though he be the borrower, cannot call upon a defendant for a *discovery* as to usury, unless he pays or offers to pay the amount equitably due, with legal interest. This decision was affirmed on appeal, by the court of the last resort. (Livingston vs. Harris, 3 Paige, 528. Same case, 11 Wendell's Rep. 329.) Under the same statute, both courts seem to have held that where *relief* was asked for without *discovery*, it must be granted without compelling payment of the principal or making a deposit. The provisions of the 6th section of the same statute, (1 Rev. Stat. p. 761,) were not held to conflict with this position, which requires that " every person offending against " the provisions of this title, shall be compelled *to*

"answer on oath any bill that may be exhibited "against him in the court of Chancery, for the dis- "covery of any sum of money, goods, or things in "action so taken, accepted, or received, in violation "of the foregoing provision, or either of them," because this statute was like the former one; but neither of them prescribes the terms upon which *relief* should be given, and the court of Chancery had long before settled the terms upon which relief should be given, under a similar section with which the legislature must be presumed to have been cognizant.

The alteration of the Chancery Rule is confined to the 8th section, and that has received a judicial construction, as has been before remarked. But the 8th section specifies a *borrower* who is entitled to *discovery* and *relief* upon different terms from that practised upon by the court of Chancery, previously. The judicial construction already alluded to, confines the language of this statute narrowly, and does not permit it to make a greater encroachment upon the old Chancery Rule, than its words and language will fairly import. In this spirit, such construction declares that a complainant filing a bill for a *discovery* of usury, need not pay interest, but must pay the principal, before he can enforce a discovery of the usury. As to the payment of interest, the old rule is relaxed by the legislature; as to the payment of principal, not. This is the judicial construction, and is of that high character that no court can properly say it is not bound by it. I am bound by it, and not only bound by its letter, but its spirit. If the judicial law is so nice as to distinguish between bills for *discovery* and bills for *relief*, to govern the acts necessary to be done by the complainant preliminary

Feb. 1841.

Cole
v.
Savage and
others.

to either, I must, in the same spirit, give a character and definition to the term "*borrower*" used in the 8th section. The courts have held, it is true, and justly, that a surety or joint maker of the usurious obligation comes within the term "*borrower,*" and this after some debate and cavil.

But in the case now before us, the complainant is a grantee of the mortgaged premises—is a stranger to the original usurious contract—does not seek to avoid the bond or personal obligation, but only to avoid the mortgage which is a lien upon the land. Upon filing his bill, he has made no payment, no deposit, no offer to pay the amount originally loaned, as a condition of removing this usurious incumbrance upon the farm he has purchased. He is in no sense, common or legal, a "borrower." It is true he does not ask for discovery, but only for relief; and it is *the* question under this aspect of the case, whether he is entitled to relief, situated as he is, without first paying or offering to pay the amount actually loaned, with interest—in other words, as to such a complainant, have the Revised Statutes abolished the old Chancery rule? It is conceded that by the statutes the complainant, if he was the borrower, might file a bill for *relief*, when he looked for his proofs elsewhere, without bringing any money into court, or making any offer to pay. But it is clear this complainant is in no sense a "borrower;" and as we are taught by former judicial constructions, and those too of the highest court, to allow only to the legislative enactment just so much force as their plain words will import, to impair the efficacy of the old Chancery rule, and no more, I shall be compelled to hold that the Revised Statutes do not reach this case,

and that it must be left to be governed by the well

established rules of Chancery in like cases. In other words, a complainant situated as this complainant is, being a mere grantee of the premises, must, before he obtains the relief he asks, so far as the Revised Statutes bear upon it, pay or bring into court the amount loaned.

I may have seemed, from the tone of the language which I have used, to question the propriety of the decision of the Chancellor and the court for the correction of errors, in the case of Livingston vs. Harris. That was far from my intention. It has indeed struck others as it has me, that it conflicted with what might fairly be the presumed intention of the legislature. But the legislature, if they had a different intention, did not express it sufficiently intelligibly to be a satisfactory guide to courts. The history of the title in relation " to the interest of money" shows that the sections adopted were selected, with some modifications, from a larger number of sections reported, and it would be surprising if, by marring one system, the legislative power in the hurry of the moment, should out of the ruins build up another perfect system, different in its features and bearings upon existing well established legal principles. In the case before us, the complainant purchased the mortgaged premises with a knowledge of the amount of the mortgage, now claimed to be usurious. He must, on the purchase, have expected to have paid this mortgage in full, and made his calculations accordingly, in the price which he gave for the premises. It is hardly consistent with equity, that he should, purchasing it as he has, hold the premises discharged from the lien of this mortgage, at the loss by the len-

62

Mar. 1841.

Cole
v.
Savage and
others.

der of even the money which he advanced. Under the old Chancery rule, the complainant could reach no such result by a bill in this court; and unless the legislature have, in words, modified this rule as applicable to this case, he should not arrive at such a result now. I do not, under the light of former decisions, conceive that the legislature have, by the Revised Statutes, made any such modification.

The mortgage under consideration, was made in 1834; but the complainant insists that it is brought within the provisions of the "act to prevent usury," passed May 15, 1837; and that under the provisions of that act, he is not compelled to make a payment as preliminary to relief. I have some doubt of the soundness of the views of the complainant's counsel, as respects the case being embraced by the act of 1837; but if I admit it, I cannot see how it would aid him. I have no doubt the legislature, in some of the provisions of the act of 1837, had an especial eye to the decision in Livingston vs. Harris, before cited. The Chancellor, in Perrine vs. Stryker, 7 Paige, 601, seems to entertain the same idea. But after all, the 4th section of the act of 1837, is almost word for word like the 8th section of the statute before cited. The 4th section of the latter act, like the 8th section of the former, only mentions the "borrower;" and there is really only this difference, so far as this question is concerned, that under the latter act, the "borrower" can file a bill for *discovery* of usury, without paying either principal or interest; and under the former act he could not, by judicial construction, file such a bill for *discovery*, without paying the principal. In this feature, this law of 1837 has legislated away the authority of the case

of Livingston vs. Harris, as to that particular point.

The complainant can derive no more aid from the 3d section of the act of 1837, than he can from the 6th section of the Revised Statutes, before referred to. Under both and indeed under all our usury laws, the usurious offender is bound to answer on oath, a bill in Chancery; but under neither, more than under our former laws, are the terms upon which he shall be compelled to answer, or relief granted, prescribed. The 4th section of the act of 1837, is substantially the same as the 6th section of the Revised Statutes, and both have substantially the provisions of our law, under which the court of Chancery have adopted their rule. Neither will the 5th section of the act of 1837, give any more aid to the complainant. That section only prescribes the duties of the court of Chancery, after the usury is proved or admitted. It directs what the final decree shall be, but not the terms which may be prescribed to enable a complainant to institute his proceedings.

This act, therefore, if applicable to this case, will not aid the complainant in this aspect of the case; and so far as the question of usury is concerned, it must be held that the bill cannot be maintained, unless the complainant brings into court, or pays, or offers to pay, the amount actually loaned. The complainant is no more a "borrower" under the law of 1837, than under the Revised Statutes; and that law no more aids him, than would the Revised Statutes.

The question, whether a grantee, like the complainant here, purchasing subject to an usurious mortgage, and himself a stranger to the usurious contract, can take advantage of such usury to avoid the con-

tract, is not necessarily here presented, or it was not presented by the counsel on the argument, or relied upon, and will not be discussed. From the frequency of these usury cases, I presume this court will soon have occasion to decide this question also.

There is enough in the case before us to enable us to decide it, so far as the question of usury is concerned, without examining the last point suggested.

But the complainant insists that if the bill cannot be sustained as a bill to cancel the mortgage on account of usury, without an offer of payment, that it can be sustained with a view of ascertaining the true amount due on the mortgage. The averment in this respect, is as follows: "And your orator is farther "advised and respectfully insists that even if the said "mortgage should not be pronounced usurious, that "no greater sum can be claimed by virtue thereof, "than the amount actually advanced by said Chit-"tenden to the said David S. Cole, and interest, "after deducting the payments that from time to "time have been made and received by said Chitten-"den as aforesaid." The special prayer of the bill is, that the mortgage may be delivered up to be cancelled; and a general prayer "for such farther relief "or such other relief as the nature of the case may "require and shall be agreeable to equity."

The stating part of the bill makes a case which shows usury in the transaction; and also a case in which if there is no usury, there should be a large deduction from the amount claimed by the defendants. The defendants had proceeded to advertise the mortgaged premises under the statute. Under such proceedings the complainant could have no opportunity to resist the amount claimed by the defendants, or

obtain the benefit of any set off. Hence the complainant insists that under this aspect of the case, he is entitled to come into this court to have the true amount adjusted. It is but reasonable and equitable that the amount should be in some way properly adjusted, and the decision of the former motion to dissolve the injunction, would leave only this matter to be litigated. The bill is evidently intended to be a bill with a double aspect ; but the defendants contend that it is not a proper case for such bill. The kinds of relief which the complainant now alleges he is entitled to, are inconsistent with each other. The one seeks to abrogate the contract as usurious and void—the other, to affirm it and reduce the amount. These different kinds of relief are claimed to be inconsistent. The prayer of the bill for general relief is in the disjunctive ; and the case made by the bill is one which would entitle the complainant to such relief, independent of the question of usury. My impressions upon this point are rather with the complainant ; but it will not be necessary to decide it, under the view which I shall subsequently take of this case. Upon this doctrine, however, see Story's Equity Pleadings, 212 ; Colton vs. Ross, 2 Paige, 396 ; Lloyd vs. Brewster, 4 Paige, 537.

The defendants farther insist, if the complainant should be deemed entitled to come in to reduce the amount claimed upon the mortgage, he should offer to pay the amount admitted to be due, which he has failed to do by his bill. That such a bill is in effect a bill to redeem, in which it is essential that the complainant should offer to pay the amount of the incumbrance sought to be redeemed from. The shape of the complainant's bill is such, that if he was permit-

ted to proceed with it without paying or offering to pay the amount of the incumbrance, the demurrer must be overruled. In that event, although the court have determined that he cannot file a bill to set aside the contract upon the ground of usury, without payment, yet the bill would be sustained; and upon proof of usury, the court would be compelled, upon the hearing, to decree a cancellation of the mortgage; and this, after they had first decided that a bill could not be filed for that purpose, without payment. This would be an absurdity, and would in any case enable a complainant, by proper allegations in his bill, untrue in point of fact, to get the whole question of usury before the court, without the payment which the rules of the court require.

To do what I deem to be equity between these parties, I must sustain this demurrer, but with permission to the complainant to amend, upon payment of the costs of the demurrer, by averring a payment or tender of the balance of the amount actually loaned, with interest, or to file a new bill, as he shall be advised.