STEPHEN H. DYER & *al. versus* ABRAHAM HALEY.

The lessors of a farm, adjoining a river, have no right to the drift-wood, which the lessee hauls upon the farm from the river, unless such right be deduced from the terms of the lease.

REPLEVIN. The defendant, who is a deputy sheriff, pleads

the general issue, and also by brief statement, that the property was in Isaac Dyer.

Isaac Dyer had long occupied a farm, adjoining the Saco river. The plaintiffs, who are his sons, purchased the farm and gave a lease of it to their father.

This is an action of replevin for some slab-wood, which had been found floating down the river, and had been hauled out upon that farm, and also for a cow.

The opinion of the Court supplies all the other material facts.

*Wilkinson,* for plaintiff.

*Luques,* for defendant.

TENNEY J. — To have maintained their action, the plaintiffs must have satisfied the jury from the evidence, that they were the joint owners of a part or of the whole of the property replevied. Evidence was introduced by them tending to prove, that Stephen H. Dyer, one of the plaintiffs, paid the sum of fifteen dollars, to redeem a cow, which Isaac Dyer had owned and mortgaged to one Dennett to secure a debt which he owed; that this cow and the sum of three dollars was given in exchange for another to one Dunn; by whom the money for the difference in the value of the two cows was furnished does not appear; there was also evidence, that the last of May or the first of June, 1845, the second cow was exchanged for the one replevied, and in the trade Alpheus Dyer, one of the plaintiffs, paid three dollars; that the last cow, after she was so obtained up to the time she was replevied, was kept upon the farm by Isaac Dyer, which he had occupied for a long time before the lease, that he took from the plaintiffs dated June 10, 1845, the plaintiffs the day before the date of the lease having taken from the owner a bond for a deed of the farm. There was no evidence of any contract between Stephen H. and Isaac Dyer, of any description, at the time the money was paid by Stephen for the redemption of the cow; it appears that it was sent to the wife of Isaac, and that he paid it to the mortgagee of the cow; and there

is no evidence of any agreement between Stephen and the mortgagee, that Stephen was to succeed to the rights of the latter; neither was there evidence of any bargain between Isaac and Alpheus, that Alpheus was to have any right in the cow replevied, by virtue of the payment of three dollars in the exchange. It is however stipulated in the lease, that Isaac shall sell and exchange stock for the lessors, and that no other stock shall be kept upon the farm, excepting that which may belong to the plaintiffs. The evidence that the cow was upon the farm when the lease was given and afterwards, was not consistent with the agreement that no stock but the plaintiffs' should be kept there, if it was considered the property of Isaac. This and the evidence that the plaintiffs had actually paid the sum of eighteen dollars, which had produced this cow, with other circumstances and facts, may have led the jury to conclude, that they were the joint owners of the cow. There was evidence introduced by the defendant tending in some degree at least to control that relied upon by the plaintiffs, and to show, that the lease of the farm and all the transactions between the plaintiffs and Isaac Dyer, in relation to the farm, the cow and other property, were fraudulent against creditors, one of whom the defendant represented. But the jury have passed upon the whole evidence, which was for their consideration, and there is not such proof of misconduct in them as would authorize the Court to disturb the verdict for this part of the property, if it was the whole subject matter of the suit.

The other property replevied, was slabs and drift-wood taken from Saco river, which passes by the farm, of which Isaac had a lease from the plaintiffs. From evidence introduced by them, this property was taken out of the river as it was passing down, by Isaac Dyer and his minor sons, who were under his charge and control, assisted one day by Alpheus, the plaintiff, and placed upon the bank, on this farm. It appeared that Isaac Dyer not only rescued it from the river, but that he hired men and teams to haul it ; that portions of it he sold on his own account, treating it in all respects as his own, and exercising com-

plete dominion over it. Although Alpheus assisted in obtaining it, it does not appear, that previous to the commencement of this action, he ever exercised any acts of ownership in relation to it, or made any claim thereto. There was no evidence tending to prove, that any agreement or understanding existed between Isaac Dyer and the plaintiffs touching the wood, which could be construed into a binding contract, that it was to be their property. They could have had no legal claim to it by virtue of the lease. The parties to that instrument, contracted that Isaac Dyer should carry on, cultivate and manage the farm in a good and husbandlike manner ; that he should buy and repair farming utensils ; sell and exchange stock, sell produce and hay, and wood if any could be spared from the farm ; to hire labor if necessary ; to buy and sell any personal property belonging to the lessors ; and that he should receive for his labor, the support of himself, his wife and minor children ; and the excess over what was necessary for their support, he was to return to the lessors at the end of each year ; and he was to hold the farm for the term of three years, on condition that he fulfilled the agreement.

If the wood had been the fruit of the labor, which the lessee was bound by the lease to perform upon the farm, by the authority of the case of *Garland* v. *Hilborn*, 23 Maine, 442, and other authorities relied upon by the defendant, there would even then seem to be impediments to the plaintiffs' recovery. But the lease does not require, that labor, such as was used in the obtaining of the wood in question, should be done for the benefit of the lessors ; neither was Isaac required to devote all his time to their service. The avails of his labors, beyond what he was to do for them would be legally his own. He was under no contract or obligation, to obtain fencing stuff for them, from the forest, the river, or any other place, than 'from the farm of which he had a lease. To the drift-wood, which came down upon the waters of the river, they had no title, and when it was recovered by him, through his own labor or that of his procurement, they could enforce no claim thereto against him. The contiguity of the farm to the river, gave the plaintiffs no

right to the drift, which floated upon its surface. The real owner of the wood, alone, could disturb the lawful possession of him, who had acquired it. Isaac Dyer had that possession, on land to which he had all the right, that the plaintiffs had previous to the execution and delivery of their lease to him.

When the evidence relied upon by the plaintiffs is examined and considered, giving it the fullest weight which can be claimed, uncontrolled by any other in the case, it is not perceived that there can be a ground on which the action can be maintained for the wood, that was replevied by the plaintiffs.

*Verdict set aside and a new trial granted.*