DAVID CURRIER ET ALS. *v.* CONCORD RAILROAD CORPORATION ET AL.

In a suit in equity by citizens of New Hampshire against railroad corporations under the act of July 5, 1867, to prevent railroad monopolies, it is

not necessary to allege or prove that the plaintiffs have any special interests, or grievance to redress, beyond those which every citizen is supposed to have.

If a bill in equity is good as to part only, a demurrer to the whole bill is too broad, and must be overruled.

The provisions of chapter 159, section 10, of the General Statutes, are not a revision of the law of July 5, 1867, and are not to be regarded as a repeal by implication.

In such a bill in equity the respondents are not bound to discover in their answers any matters that will expose them to penalties, and any provisions in the law of July 5, 1867, which require such discovery are in conflict with the constitution.

So the defendants may not only protect themselves from such discovery by demurrer, but as an exception to the general rule they may in their answers insist that they are not bound to make the discovery.

BILL IN EQUITY. David Currier and sundry other citizens of the State against the Concord Railroad and the Manchester & Lawrence Railroad and the directors of each of said corporations, and the superintendent and other officers of the Concord Railroad.

The bill states when the roads were chartered, and that by means of the connecting roads below they form portions of rival and competing routes by different lines, for all through business between Manchester and Boston, and by northern connecting lines between the central portions of New Hampshire and Vermont and Boston; that the capital of the Concord Railroad is $1,500,000, and of the Manchester and Lawrence Railroad, $1,000,000:

That the Concord Road was chartered for the transaction of business over its own specific route, with authority to receive tolls to a given rate per cent. on the cost of the road, with a provision that at a given time the State might take such road at its cost, provided such percentage had been received, or by making up this percentage; that any connection with the Manchester & Lawrence Road by which its liabilities and responsibilities are increased, or its income changed and altered, is a violation of the charter of the Concord Road; that the Manchester & Lawrence Road was also limited by its charter to the business of its own line of route and earnings, and subject to a like provision of purchase by the State:

That on December 27th, 1860, the two roads, against the provisions of their charters and other express provisions of law, made a contract commencing Dec. 1, 1861, and to continue twenty years, by which the two roads were consolidated and made equal sharers in the joint earnings of both roads in proportion to their capital stock, and the sole control and management of the Manchester & Lawrence Road placed in the hands of the Concord Road; and afterwards on January 1, 1865, a contract was made between the Concord Road, and the Nashua & Lowell, and Boston & Lowell Railroads, to commence February 1, 1865, and continue thirteen years by which the through business from Manchester and above was to be transacted so far as might be consistently,

by way of the Nashua & Lowell line of route to Boston, and what did not go that way should be credited to the Nashua & Lowell and Boston & Lowell Roads and accounted for as their business ; and the Concord Road to receive nothing for the same over the Manchester & Lawrence Road except the actual cost of transporting the same, reckoned at one and one-fourth cents per mile per ton for freight and three-fourths of a cent per mile for passengers ; and in consideration the lower roads agreed to deduct for the hauling of all through passenger and freight business of the Concord Road over these lower roads one-third the taxable mileage distance, or a discount of thirty-three and one-third per cent on such haulage :

That after this contract and with full knowledge of it, the Concord Road and the Manchester & Lawrence Road extended their said contract thirty years or to Dec. 1, 1911 :

That under these contracts and in conformity with the intent and design thereof, the through business between Manchester and Boston, and Concord and Boston, and between the upper roads and Boston, has been excluded from the Manchester & Lawrence Railroad to the greatly increased expense of the upper roads, and the same facilities have been refused to passenger travel over that line as have been enjoyed over the Lowell line.

The bill then recites the substantial parts of the act of July 5, 1867, entitled an act to prevent railroad monopolies, and then alleges that the Concord and the Manchester & Lawrence Roads are rival and competing roads, or portions of rival and competing lines of road as specified in said act, and that the aforesaid contracts between said roads have not been rescinded, annulled or discharged by the parties thereto, and that said roads since said act took effect have been run, and are now being run and operated by the defendants, their officers and agents, with an intent, design and common understanding between them to secure to them the results, or similar results to those specified in the contracts aforesaid, and so that the earnings shall be kept in the same relative position to each other as heretofore, and as shall prevent their operation as rival and competing lines or portions thereof, under fair and open competition, and with the purpose and intent thereby, to evade the provisions and avoid the operation of said act.

And said roads contend that they have a legal right to equalize the earnings of the roads to prevent competition ; and under pretence of complying with said act they have entered into an arrangement whereby the same persons, heretofore acting as officers and agents of said roads and running the same jointly for the common purposes thereof and who are mainly dependent for their compensation on the Concord Road, that is, James R. Kendrick, Stevens, Sanborn and Webster, named in the bill, have been elected to, and hold the same offices in both roads, and said roads are not run separately by their own officers agreeably to the intent and meaning of said act, but said contract as arranged was devised with the express intent that the roads should be run in all essential respects and particulars as heretofore, so as to secure the results stipulated in the contracts, and to evade compliance with said act :

That said roads have a common interest and liability in proportion to their capital stock, in the rolling stock, repairs and contingencies of either road and in the materials consumed in running the same and have expended large sums of money from the joint earnings in the erection of depots, buildings and fences on either line, which is in violation of the provision that said roads shall be run separately, as rival and competing roads, each dependent on its own earnings for support and in fair and open competition :

That defendants have entered into various other engagements and arrangements to evade said act, and it is agreed or understood by them that the contracts aforesaid between them shall be suspended or not enforced for the present, and that any loss arising from such suspension shall be made up to the Manchester & Lawrence Road, or either road prejudiced thereby, by allowing in the settlement of other matters, running arrangements, or joint interest in property of such roads, such sum, beyond the amount due thereon as shall make up any such loss ; or by underrating the expenses of the Manchester & Lawrence Road, or by loan of money on account of, or on the security of, said road, or by advance of such sums of money from time to time to the Manchester & Lawrence Road as shall make up any deficiencies in the net earnings of that road, so as to equal the net earnings of the Concord Road in proportion to its capital, and as shall constitute, as near as may be, the entire fulfillment of the contracts aforesaid to the Manchester & Lawrence Road ; and such payments have been made in compliance with said understanding :

That with the exception of allowing the directors of the Manchester & Lawrence Road to run and operate its road through the agency of persons holding the same positions in the Concord Road as aforesaid, all other matters and joint operations between the two roads have been and are continued in force as heretofore, and no attempt has been made since the passage of said act, to dissolve such connection or terminate such common operation and partnership or adjust and settle any accounts arising therefrom, but the said roads avow their intent to continue such running arrangements, until such time as said contracts shall be finally adjudged as illegal ; but the said corporations have taken no measures to obtain such adjudication, and do not intend to do so, but on the contrary well knowing the said contracts to be illegal and contrary to the provisions of said act continue to maintain the same, with the design thereby to violate and evade the act aforesaid ; and that it is understood and agreed that when any disabilities from such act shall be removed, the former contracts or like contracts shall be renewed, or compensation made therefor, and that common efforts and expenditures shall be put forth to maintain said contracts, and do away with anything conflicting therewith.

The bill further alleges that the said roads have not been run as rival and competing roads, and that the Manchester & Lawrence Road has not been kept open to the public for the free choice and benefit of transportation by that route, but has practically been shut up against all through freight over its road between Boston and Manchester and the central and

northern portions of the State and Boston ; that equal advantages have not been given to portions of passenger travel on that route as upon the Lowell route, and that means have been used to turn the travel and transportation over the Lowell route with the assent of said boards of directors ; all which acts and doings of the defendants are in violation of the charters of said roads, the act of July 5, 1867, the laws of the State, the rights of the public, and of these complainants, as citizens of this State.

The bill prays a discovery, and that the defendants may be restrained by injunction from operating said roads in any way or manner contrary to the provisions of said act, and from enforcing the said several contracts or payments, compensations or advances under them, or on their account, and from making the settlements or adjustments aforesaid and from paying any portion of the earnings of either road to the other, or sharing in the common earnings or supplies or means of operation of the roads, and from running said roads in any way or manner other than as rival or competing lines of route, independent and separate from the control of officers having charge of such other road, and under fair and open competition, and from all other violations of the acts and laws aforesaid, and for such other relief as may be just.

To this bill there was a demurrer and several causes assigned which sufficiently appear in the opinion of the court.

The cause was argued by *Minot*, for defendants, and by *Eastman* and *Foster & Sanborn*, for plaintiffs.

BELLOWS, J. The first cause of demurrer being removed by an amendment of the bill by an averment that the complainants are citizens of this State, we are brought to the consideration of the second cause, which is, that it is not alleged in the bill that the plaintiffs, at the time of the filing of the bill or at any other time, ever had in any way any rights or interests in, or were in any way concerned in, or aggrieved by, any of the said matters in said bill charged and complained of against said defendants.

By the act of July 5, 1867, under which these proceedings were instituted, it is provided that for violating the provisions of that act the officers of a railroad shall be subject to a fine not exceeding five hundred dollars for the use of the county within which the suit for it shall be instituted ; and also, that it shall be lawful for any citizen to apply to the supreme judicial court, or to any one or more justices thereof, not interested in said road or roads, whose duty it shall be to issue an injunction to restrain such violation ; and the question is whether it is necessary to entitle a citizen to make such application, that it should be alleged that he had rights or interests in, or was concerned in, or aggrieved by, any of the matters charged in the bill ; or in other words whether it must be shown that the person so applying had a special interest in the subject, beyond that which every citizen is supposed to have.

The object of the law is to prevent the consolidation of rival and competing lines of railroad by contracts or arrangements between them, by means of which competition is removed ; the purpose being to pre-

vent the increase of the charges of such railroads beyond what might be expected under the influence of a free competition.   In the promotion of this object every citizen having occasion to use such roads, or to purchase articles transported over them, has an interest; but his interest is not of the character that may be protected by a suit to recover damages. It is much like the interest which every citizen has in a common highway—in its being kept in repair—and there, independent of statute provisions, he can maintain no action on account of any defect in its condition; and by statute he can maintain an action only in case he suffer special damages while in the use of the road, but not for being deprived of the use of it altogether by its being permitted to become impassable; as held in *Griffin* v. *Sanbornton*, 44 N. H. 246.   Upon the same principle no person has such an interest in preserving a free competition between rival railroads as to be entitled to maintain a suit for diminishing or removing such competition; but the wrong which arises from the violation of the provisions of the statute is essentially a public wrong in which no citizen has a special or private interest.

Besides, the proceeding here is not to recover damages for an injury already committed, but to restrain the violation of what is essentially a public right.   It could never, therefore, have been the intention of the legislature to require that the citizen applying for an injunction should have a special pecuniary interest in enforcing the law.

The provision authorizing an injunction upon the application of any citizen stands upon a footing much like the case of *qui tam* actions, where the law calls upon individual citizens for aid in enforcing some public statute, and gives to them a part or the whole of the penalty recovered, as an inducement to prosecute the offender.   In such cases the persons instituting the proceedings are not supposed to have, usually, any special interest in the subject of the suit, the object being simply to enforce a penalty for public offences, and thus to prevent the commission of them.

In most cases any citizen may bring a suit of this character, but the one who sues first is entitled to the penalty, and there can be but one recovery; and it is held that the first suit may be pleaded in bar of any subsequent suit.

In cases like the one now before us, as the object is to prevent the commission of a public offence, and not to redress a private grievance, there could be no occasion for more than one injunction, and the court might properly decline to entertain a second application where there was already a subsisting injunction.

Upon these views we think the second cause of demurrer cannot be sustained.   We have examined the cases cited by defendants' counsel on this point and find nothing in conflict with our views.   In *Canal* v. *Newcomb*, 7 Met. 276, and *Fall River Co.* v. *Old Colony Railroad*, 5 Allen, 224, it was held that a private individual could not maintain a suit for injuries caused by a public nuisance, such as a deficiency in the depth of a canal, and the construction of a bridge over navigable waters, where he suffered no special or peculiar damage not common to others interested in the navigation.   So in *Brainard* v. *Connecticut River*

*Railroad*, 7 Cush. 506, it was held that a bill in equity by a private individual could not be maintained to enforce the order of the county commissioners as to the construction of a railroad crossing or public highway, but it could be done only by the mayor and aldermen of cities and the selectmen of towns, the statute having given to no others such authority.

It is urged by defendants' counsel that the bill includes matters not embraced in the act of July 5, 1867, and that in respect to them, the plaintiffs have disclosed no title to relief. If it be true that other matters, such as the violation of the charters of those corporations or of other laws than that of July 1867, are included in the bill as substantive grounds for relief, we are not aware that the bill discloses any title to maintain it for such a purpose ; but as it may be maintained to restrain a violation of the act of July, 1867, the demurrer is too broad, and must, for that cause, be overruled, it being well settled that a demurrer cannot be sustained in equity that applies to the whole bill, when it is good for a part only. Story's Eq. Pl. 443 ; 1 Daniel's Ch. Pl. 651 ; *Bay State Iron Co.* v. *Goodall*, 39 N. H. 236.

Upon examining the bill, however, we do not perceive that relief is sought for anything but the violation of the law of July, 1867, although it is alleged that illegal contracts had been entered into prior to that law, but upon a careful examination of the whole bill these allegations do not appear to have been made as distinct grounds for relief, but as descriptive of the arrangements by which the law of July, 1867, is alleged to have been violated ; that is, stating the contracts made before that law, by which the two railroads were consolidated and the competition between them removed, and then, that since the law in question, the arrangement under those contracts has substantially continued, and the roads been run and operated under one direction, and not as rival roads.

The substance of the prayer is for an injunction to restrain the running of these roads in a manner prohibited by the act of July, 1867, although it is also prayed that they may be restrained from the enforcing of the several contracts mentioned in the bill. So far as this applies to anything done under the original contracts before this law of 1867 took effect, it would not be justified by the case made by the bill, nor would it change the substantial character of the bill. We are of the opinion, then, that this cause of demurrer cannot be sustained.

Another cause of demurrer is that the law of July 5, 1867, was repealed by the General Statutes and is not now in force, and this makes it necessary to examine that law in connection with the subsequent act, which is alleged to be a revision of the other.

The object of the law of July 5, 1867, under which these proceedings are instituted is, as its title indicates, to prevent railroad monopolies. It provides that rival and competing lines of railroad shall not be allowed to consolidate them, and that neither of said lines shall be run or operated by any such rival or competing line under any business contract, lease, or other arrangement, but each and every such railroad shall be run, managed and operated separately by its own officers and

agents, and be dependent for its support on its own earnings from its local and through business in connection with other roads, and the facilities and accommodations it shall afford the public for travel and transportation under fair and open competition, unless such lease, contract, or arrangement, be authorized by the legislature and approved by the governor and council.

This act was approved July 5, 1867; but the defendants contend that it was repealed the next day by the General Statutes which were then approved; not in express terms by naming the act, but by virtue of section third of chap. 273 of the General Statutes, which provides that "all acts and parts of acts, the subjects of which are revised and re-enacted in the General Statutes, or which are repugnant to the provisions therein contained, shall be repealed from and after the first day of January following," when the General Statutes went into effect.

It is contended by the defendants that the subjects of this act of July 5, 1867, are revised and re-enacted in the General Statutes in chap. 150, sec. 10. By said section it is provided that no contract between two or more railroad corporations for the use of their roads shall be legal or binding for a longer time than five years, nor unless sanctioned in writing by the railroad commissioners and approved by the governor and council.

The chapter of which this section is part, is entitled "Railroad Connections," and its object appears to be to regulate the use of one railroad by another railroad having the right to enter upon it; providing that every railroad shall draw over their road the cars, passengers and freight that may be brought to it by another road having the right to enter upon and use it, but providing that no railroad shall be required to allow its road to be used by any other than its own motive power. In case the railroads are unable to agree upon the compensation for such use, referees may be appointed by the supreme judicial court or two justices thereof in vacation, who shall determine the rates and terms of such transportation.

The object of that chapter is to determine in what manner one railroad shall be entitled to use another; and to prescribe a mode of fixing the terms and rates for such use in case the parties cannot agree; but we find no provisions upon the subject of railroad monopolies or the consolidation of railroads.

The provisions in section ten, before quoted, limiting contracts for the use of railroads to five years, and requiring the approval of the railroad commissioners and the governor and council, were apparently intended to apply to such uses as are treated of in that chapter, and not to the subject matter of the law of July 5, 1867.

The distinction between the two subjects is very marked. In the one case the manner in which one railroad may enter upon and use another, and the compensation for such use, are regulated. In the other the purpose is to restrain the consolidation of rival railroad lines by arrangements which give to one the management of both, and thus destroy competition.

It is very true that competition might thus be destroyed by means of

a lease of one railroad to another, which might be regarded as a contract for the use of the road. On the other hand it might be accomplished in various ways without contracting ·for the use of one of the roads, as by an agreement to divide the income of both roads according to the capital of each, or by giving to the same persons the management of both roads.

We should hesitate, therefore, to hold that the legislature intended to apply the provisions of the aforesaid section ten of the General Statutes to any part of the subject matter of the act of July 5, 1867.

If, however, it should be considered that the limitations on the power to contract for the use of railroads did apply to leases entered into to prevent competition, it will be observed that it would modify but slightly the act of July 5, 1867 ; in fact only substituting for the sanction of the legislature and the governor and council, the sanction of the railroad commissioners and the governor and council, and making the further provision that such contracts should be in force for no longer term than five years. To hold that such a modification is a repeal by implication of the entire act of July 5, 1867, finds no countenance in any of the adjudged cases. There is clearly no attempt to revise that act. Its general provisions are in no respect inconsistent with the new law, and there is nothing that indicates an intention on the part of the legislature to repeal it.

It is well settled that the law does not favor a repeal by implication, and the reason for this is obvious. All laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subject, and it is reasonable to conclude that the legislature in passing a statute did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable. Such is the doctrine laid down in *Bowen* v. *Lease*, 5 Hill 221. So in Bac. Abr. Statutes D, it is said that "repeals of statutes and changes of the common law by implication are not favored in law ; nor are they allowed except the inconsistencies or repugnancies are plain, for they carry with them a reflection upon the wisdom of the legislature ; and such repeals have ever been confined to the repealing as little of the preceding laws as possible ;" and the same doctrine is laid down in 19 Vin. Abr. 525 ; and the same views are recognized in *State* v. *Wilson*, 43 N. H. 415 ; *Hall* v. *Martin*, 46 N. H. 347, per Perley, C. J., and in *State* v. *Otis*, 42 N. H. 71, and authorities cited in those cases.

With these principles in view, we think it very clear that the law of July 5, 1867, was not repealed by the General Statutes. If the provisions of the section ten before referred to can be regarded as applying to any contracts for the use of railroads embraced in the law of July, 1867, (and we are not prepared to say that it can be,) it does nothing more than to modify the sanctions required, and limit the duration of such contracts, and leaves untouched and in full force all the provisions of that law which are designed to prevent the consolidation of rival railroads and the destruction of competition ; and this, we think, has nothing of the character of a revision of the former law from which a repeal

of that law can be implied. It is at most but a modification of a single provision, and affords no indication whatever of a purpose to repeal the whole law.

If a repeal of the entire act is to be implied from what has been done here, it would become necessary in all cases where it is proposed to modify some provision of an existing law to state expressly that the rest of the law is to continue in force, and thus reverse entirely the well established rules of construction, which hold that a repeal will not be implied unless the inconsistency is such that the two laws cannot stand together.

If in ordinary cases the legislature, when passing a law, is presumed to have in mind all former laws upon the same subject, and not to intend to repeal them unless that intention be plainly manifested, that presumption must be especially strong when, as in this case, the former law was passed by the same legislature and only one day before.

In addition to the causes of demurrer specially set forth, the defendants at the argument assign the further cause that the discovery asked for would expose them to penalties.

It will be observed, however, that the demurrer is to the relief prayed for, and not to the discovery, and therefore as a good case for relief is stated this objection cannot be urged. If the demurrer was to be regarded as to the discovery as well as to the relief, it must be overruled if it appeared that as to the relief the plaintiffs are entitled to maintain their bill, for it is well settled that if the demurrer is applied to the whole bill, when it is good as to part only, it must be overruled; for it cannot be good as to a part which it covers and bad as to the rest. Story's Eq. Pl. section 443, and cases cited, note 1; *Burns* v. *Hobbs*, 29 Maine Rep. 277, and cases cited; 1 Daniel's Ch. Pr. 651; *Bay State Iron Co* v. *Goodall*, 39 N. H. 236; *Conant* v. *Warren*, 6 Gray's Rep. 562.

In the case before us the plaintiff is, as the matter now appears, entitled to the relief, even if he be not entitled to the discovery he seeks, and therefore the demurrer cannot be sustained for the cause under consideration, whether the demurrer be regarded as covering the relief only or both discovery and relief.

We are aware that the English courts have held that there cannot be a demurrer to the discovery only and not to the relief, upon the ground that it would be a demurrer not to the thing required, (the relief,) but to the means by which it was to be obtained. *Morgan* v. *Harris*, 2 Bro. Ch. Rep. 319; Story's Eq. Pl. section 312, and cases cited. But in cases where the bill shows a good title to relief but the defendant is not bound to make discovery for the reason that his answer may expose him to penalties, or tend to criminate him, we think it is well settled in the American courts that he may demur to the discovery, or so much of it as he cannot make without so exposing himself; provided it is apparent on the face of the bill that a discovery will be attended with that effect, and if it does not so appear, he may protect himself by plea.

In the English courts it seems to be held that where a party is entitled to discovery only and he prays relief also, the whole bill is de-

murrable; Story's Eq. Pl. section 545, and cases cited; but such we think is not the law in this country.

If the discovery is strictly incidental to the relief, as in some cases it may be, so that discovery cannot be had unless the title to the relief be shown, then, if the title to relief is defeated, the whole bill must fail; but if the bill makes a case entitling the plaintiff to discovery independent of relief in that suit, as for example, in aid of a suit at law, we perceive no good reason for holding that a demurrer to the whole bill will lie because there is a prayer for relief; and so it was formerly held in England upon the ground that a party was not to be prejudiced for having asked too much. See Story's Eq. Pl. 312 note 2, and authorities; *Brandon* v. *Sands*, 2 Ves. Jr., 514.

In *Livingston* v. *Livingston et al.*, 4 Johns. Ch. Rep. 294, Chancellor Kent lays it down as the law of New York that if a bill for discovery and relief be good for discovery, a general demurrer to the whole bill is bad, which he says conforms to the ancient English practice. So is *Kimberly* v. *Sells et al.* 3 Johns. Ch. Rep. 467. So in *Livingston* v. *Story*, 9 Peters' R. 632, 658, it is held that if any part of the bill is good and entitles the plaintiff either to relief or discovery, a demurrer to the whole bill cannot be sustained.

However this may be, we think it quite clear that in many cases of bills for discovery and relief the defendant may demur to the discovery alone, and the demurrer will not extend to preclude the plaintiff from having the relief asked for, if he can establish his right to it by other means than a discovery from the defendant himself; as when there is something in the defendant's situation which renders it improper for a court of equity to compel a discovery, for the reason that it may expose the defendant to pains and penalties, or subject him to some forfeiture or something in the nature of a forfeiture, or may lead to the violation of professional confidence. 1 Dan. Ch. Pl. 625–627; Story's Eq. Pl. section 547, 605; *Livingston* v. *Harris*, 3 Paige Ch. Rep. 528, 537; *Brownell* v. *Curtis*, 10 Paige Ch. Rep. 210, 214.

In *Livingston* v. *Story*, 9 Peters' U. S. Rep. 658, it is laid down as an established and universal rule that if a bill for discovery and relief contains proper matter for the one and not for the other, the defendant should answer the proper, and demur to the improper matter. But if he demurs to the whole bill, the demurrer must be overruled.

So in *Wright* v. *Dame et al.*, 1 Met. 237, it was held that on a general demurrer to the whole bill, if there is any part either as to relief or discovery, to which the defendant ought to answer the demurrer being entire ought to be overruled. In that case the demurrer to the whole bill was overruled, and the demurrer *ore tenus* to the relief was allowed, and the defendant required to answer to the discovery.

In *Dummer* v. *The Corporation of Chittenham et al.* 14 Ves. 245, the demurrer was overruled, and in giving his opinion Lord Eldon said that these persons may by answer discover part; and may insist, either in that mode or by demurrer, that they are not bound to discover other matters; but the plaintiff may have a chance of proving them, and thus might make a case for relief.

It is proper to suggest that by overruling the demurrer the defendants are not obliged to discover any matters that will expose them to penalties, but may in their answers insist that they are not bound 'to make. such discovery; which is said to be a well established exception to the general rule that defendant cannot by answer object to make discovery as to any particular matter of which it is sought in the bill. *Bay State Iron Co.* v. *Goodall*, 39 N. H. 237; *Livingston* v. *Harris*, 3 Paige Ch. Rep. 537; Story's Eq. Pl. 607.

It is very clear that they cannot be compelled to make discovery that will expose them to penalties unless they are legally required to do so by the act of July 5, 1867, which provides that upon application of the character of the present one, the officers shall be liable to examination under oath, touching the infringement of that act.

These terms are explicit and would bind the defendants to disclose, even though it exposed them to penalties, if the provision is not in conflict with the constitution of this State. By section fifteen, part first of that constitution it is declared that no subject shall be held to answer for any crime or offence until the same is fully and plainly, substantially and formally described to him; or be compelled to accuse or furnish evidence against himself.

This provision is the supreme law of the State, and binds not only the courts but the legislature; and no law can be made that shall compel a person to accuse himself of crime or to furnish evidence against himself, either by testifying upon his trial for the offence charged against him, or being compelled in some other cause to disclose his guilt in such way that his statement can be given in evidence to convict him of such offence. It is substantially the rule of the common law by which the courts in England and America have long been governed, and by it the framers of the constitution intended to bind the legislature.

It is clear, then, we think, that a law which should compel a person to testify to matter which as an admission might be used against him on a subsequent trial for a penal offence, would be in conflict with this provision of the constitution. In many jurisdictions in this country and in England, laws have been enacted requiring persons in aid of civil remedies to make disclosures which might tend to charge them with penal offences, taking care to provide at the same time that such disclosures should not be used against them on a trial for such offences, and thus obviating the objection that they were required to furnish evidence against themselves of the commission of an offence.

With this protection a witness may lawfully be required to testify, as he would be when a prosecution for the offence was barred by the statute of limitations or the penalty was remitted. *People* v. *Kelley*, 24 N. Y. 74; *Falvey* v. *Massing*, 7 Wis. 630; 1 Dan. Ch. Pl. 626; 3 Greenl. Evi. sec. 278, note 2 and cases.

Without such protection a law which should require a witness to testify to facts tending to criminate him would be, we think, in conflict with the constitutional provision in question; and such is the doctrine of *Livingston* v. *Harris*, 3 Paige Ch. Rep. 534, where it is laid down that it is inconsistent with the spirit of the constitution to compel a de-

fendant to be a witness against himself. where the effect of his disclosure would be to subject him to a forfeiture.    The same doctrine is recognized in *The People* v. *Kelley*, 24 N. Y. 74, before cited ; and this under a constitutional provision much less explicit than ours—their's providing that no person shall be compelled, in any criminal case, to be a witness against himself, while ours provides that no subject shall be held to furnish evidence against himself; and this, we think, must be construed to mean upon a charge for any crime or offence, as stated in a preceding part of the article.

Our conclusion, then, is that as defendants are not protected against the use of any discovery they may. make here, in a prosecution for the penalty imposed by the law of July 5, 1867, they cannot be required to make any answer that will tend to expose them to that penalty.

*Demurrer overruled.*