## MORRILL v. BOSTON & MAINE RAILROAD.     {Aug. 12, 1875.

### Act of 1867, chapter 8—To prevent railroad monopolies.

The B. & M. and E. railroads entered into a contract, or arrangement, whereby each should retain sixty per cent. of its gross earnings between all competing points of their respective routes and Boston, to pay running expenses, and the remaining forty per cent. of such gross earnings should constitute a common fund, to be equally divided between said roads. *Held*, that such contract came within the prohibition of the act of 1867, ch. 8, entitled "An act to prevent railroad monopolies."[*]

The E. Railroad was not chartered by the legislature of this state, but controlled and operated four other railroads which were so chartered. *Held*, that a bill in equity might be maintained, under the provisions of said act, by stockholders in the B. & M. Railroad, against the B. & M. and E. railroad corporations for an injunction to restrain the operating of such New Hampshire roads under the illegal contract aforesaid.

*Held*, also, that the fact that such New Hampshire roads were only parts of lines, extending into the adjoining states of Maine and Massachusetts, was no bar to the maintenance of the bill.

---

[*] The material parts of the act are recited in the opinion of Ladd, J.

BILL IN EQUITY, against the Boston & Maine Railroad and its directors, and against the Eastern Railroad and its directors and managers, in which the plaintiffs allege that they are stockholders in said Boston & Maine Railroad; that said Boston & Maine Railroad was chartered by the legislature of said state of New Hampshire, and, by the action of the legislatures of said Massachusetts, New Hampshire, and Maine, forms and constitutes a joint and continuous line of route between said Boston and Portland and between said Boston and Great Falls, in said state of New Hampshire, and all intermediate places, and that said Eastern Railroad was chartered by the legislature of said Massachusetts, but, on the first day of May, A. D. 1874, and for a long time prior thereto, did, and does now, run, operate, and control the Eastern Railroad in New Hampshire, a corporation chartered by the legislature of said New Hampshire, and existing under and by virtue of the laws of said state, and the Portland, Saco & Portsmouth Railroad, a corporation chartered by the legislatures of said New Hampshire and Maine, and existing under and by virtue of the laws of said states, and the Portsmouth, Great Falls & Conway Railroad, a corporation chartered by the legislatures of said states of New Hampshire and Maine, and existing under and by virtue of the laws of said state, and the Portsmouth & Dover Railroad, a corporation chartered by the legislature of said state of New Hampshire, and existing under and by virtue of the laws of said state, under leases, contracts, or other business arrangements, and thus, by means of said leases, contracts, or other business arrangements, the said Eastern Railroad constitutes a distinct and continuous line of route between said Boston and said Dover, between said Boston and said Great Falls and Salmon Falls, in said state of New Hampshire, and between said Boston and said Portland, Saco, Biddeford, Kennebunk, and South Berwick, all in said state of Maine; and thus, the plaintiffs say, that the said Boston & Maine Railroad and the said Eastern Railroad constitute different and competing lines of route for public travel and transportation between the said Boston and Portland, Biddeford, Saco, Kennebunk, South Berwick, Salmon Falls, Great Falls, and Dover aforesaid, and that they form rival and competing lines of route between said points, and that said Boston & Maine and Eastern railroads cannot be allowed to consolidate said roads or lines, and that neither of said lines, or any road or roads composing the same, shall be run or operated by any such rival and competing lines, or any road or roads, or portion thereof, under any business contract, lease, or other arrangement, but that each of said railroad corporations shall be run, managed, and operated, separately, by its own officers and agents, and be dependent for its support on its own earnings from its local and through business, in connection with other roads, and the facilities and accommodation it shall afford the public for travel and transportation, under fair and open competition, unless such lease, contract, or arrangement be first authorized by the legislature and approved by the governor and council of the state of New Hampshire; but the plaintiff charges, that on or about the first day of May, A. D. 1874, the

directors, officers, or agents of said Boston & Maine and said Eastern Railroad corporations entered into a contract, agreement, or arrangement, by the terms of which the said Boston & Maine and Eastern railroads each should retain sixty per cent. of its gross earnings, between all competing points of their respective routes, and the city of Boston aforesaid, to pay the running expenses of their respective roads, and the balance of said gross earnings, being forty per cent. thereof, should constitute a common fund, to be divided equally between said Boston & Maine Railroad and said Eastern Railroad, by reason whereof, he says, the said Boston & Maine Railroad and said Eastern Railroad, each of them, is not run, managed, and operated, separately, by its own officers and agents, and is not dependent for its support on its own earnings from its local and through business, in connection with other roads, as the law requires; and he says that said Boston & Maine and said Eastern Railroad corporations are enabled, between said competing points on said routes, under said contract, agreement, or arrangement, to exercise, and do exercise, an obnoxious, injurious, and illegal monopoly, and in effect consolidate said independent and competing lines; and the plaintiff further says, that said Boston & Maine and said Eastern Railroad corporations have, ever since said first day of May, A. D. 1874, enforced said contract, agreement, or arrangement, and still continue to enforce and carry out the same, by reason whereof the public is deprived of the facilities and accommodations for travel and transportation, and the benefits it is entitled to and did enjoy prior to said first day of May, A. D. 1874, under a fair and open competition between said corporations; and the plaintiff further says, that said contract, agreement, or arrangement was never authorized by the legislature, nor has the same been approved by the governor and council of said state of New Hampshire; and the plaintiff further alleges, that said contract, agreement, or arrangement, and the enforcing and carrying out of the same as hereinbefore set forth, are in direct violation of the laws of the state of New Hampshire, and the plaintiff and all other stockholders of said Boston & Maine Railroad are thereby deprived and defrauded of their just proportion of the net earnings of said Boston & Maine Railroad.

Wherefore he prays that said Boston & Maine and said Eastern Railroad corporations, and the directors, officers, agents, attorneys, aiders, and abettors of each of them shall be strictly enjoined not to enforce or carry out, or attempt to enforce or carry out, said contract, agreement, or arrangement, or any part thereof, or any contract, agreement, or arrangement whereby they shall interfere with, or control, in any way or manner, the operations, management, or directions of any independent or competing line of route, road or roads, except the line or road of which they are the proper and legal officers, under its charter and agreeably to the laws of the state of New Hampshire, or whereby the earnings of either one of said corporations, or any part thereof, shall be received, appropriated, or in any way controlled or directed for the benefit or in the interest of the other, or to the injury

of any stockholder thereof. And the plaintiff further says, that all written contracts, agreements, or arrangements, and all memoranda of the same, and all books of accounts and records relating to the matters herein set forth, are in the possession, custody, and under the control of the directors, officers, and agents of said Boston & Maine and said Eastern Railroad corporations. And he prays that this court may order said directors, officers, and agents to appear and produce all contracts, agreements, or arrangements, and all memoranda relating thereto, and all books of accounts, and records of other matters relating to the same, and all evidence of whatever name, kind, and description in relation to all matters hereinbefore set forth, and to answer, under oath, as to all matters hereinbefore set forth, alleged, and charged, agreeably to the laws of the state of New Hampshire, and for such other relief as may be just.

The Boston & Maine Railroad, Amos Paul, William P. Stevens, Frank Jones, and James W. Johnson, appear and file a demurrer to the bill, assigning the following causes: (1) Because it appears by the bill that said Eastern Railroad is a corporation existing under the laws of the commonwealth of Massachusetts, and it does not appear that the same was chartered by the legislature of this state, or that said railroad or any part thereof is located within the state. (2) Because this court has no jurisdiction of said Eastern Railroad or its officers named in the bill, or of the contract with said Boston & Maine Railroad alleged in the bill. (3) Because the said alleged contract is not contrary to any law of this state, and it does not appear by said bill that the same is unreasonable or injurious to the plaintiff. (4) Because it appears that the Boston & Maine Railroad, by the action of the legislatures of Massachusetts, New Hampshire, and Maine, forms and constitutes a joint and continuous line between the places named in the bill. (5) Because said bill is without equity, and is not sufficient to entitle the plaintiffs to any discovery or decree whatever.

The court *pro forma* overruled the demurrer, and the defendants excepted. The questions of law arising thereon were transferred to this court.

*Hatch*, for the defendants.

The demurrer is well taken.

I. It is supposed that the bill is founded upon the act of July 5, 1867—Laws of N. H., 1867, p. 6, ch. 8. That act is, by its terms, applicable only to "two or more corporations, chartered by the legislature of this state." But, in the plaintiffs' bill, the Eastern Railroad is described as a corporation "chartered by the legislature of Massachusetts;" and there is no statement that it was ever chartered by our legislature, or that it, or its officers, are in any way subject to the legislative control of this state.

It is averred that the Eastern Railroad Co., "by means of leases, contracts, and business arrangements" with certain other railroads,

wholly or partly within this state (not parties to this suit), constitutes a direct and continuous line, competing with the Boston & Maine Railroad. But this fact does not bring the Eastern Railroad Co. within the terms of the statute,—which, being penal in its nature, is not to be enlarged by construction. Nor does it include that railroad within the reason of the statute, because,—

II. Neither the legislature nor the courts of this state have or can have any jurisdiction over the Eastern Railroad Co. by which its contract, made and to be executed without this state, can be controlled. No state has power to prohibit or make penal any act done in another state, and by its citizens. The plaintiffs' bill describes the contract, which they complain of, as relating to or affecting competition between Boston and Portland, &c., and places within this state. It would be difficult for our legislature to apportion such a contract, or to say how much of it applies to transportation within this state. And it would be impossible to prevent obvious modifications of the contract which would completely evade any attempt of the legislature of New Hampshire to control it. These and similar reasons probably induced the strict limitation of the act expressed in its first section.

III. The act of July 5, 1867, provides (1) that certain railroads shall not consolidate; (2) that neither shall be operated by the rival or competing line, under any control, lease, or other arrangement; and (3) that every such railroad shall be run, operated, and managed by its own officers and agents. These are the main and operative clauses of the statute. The words which follow,—" and be dependent for its support on its own earnings, from its local and through business in connection with other roads, and the facilities and accommodations it shall afford the public for travel and transportation, under fair and open competition," are evidently intended to qualify and explain the preceding clauses, and not to establish a new limitation. The statute is penal, and not to be extended by construction; but it would require a forced construction to give the statute the meaning claimed in the plaintiffs' bill. To sustain the bill, the statute must be read as if it contained the words, "and no such road shall make with the other any contract affecting their separate earnings at competing points on their line." If the legislature had intended any such thing, it would have been plainly expressed, and not left to implication. There are no allegations in the bill which show that the alleged contract between the defendant corporations is unreasonable; nor is it made to appear how it can be prejudicial to the public, or to the stockholders of either road.

IV. The fourth cause of demurrer, as it stands in the printed case, is made absurd by the erroneous insertion of the word "not." It is averred in the bill, that the Boston & Maine Railroad, by the joint action of the legislatures of this state, Massachusetts, and Maine, forms a joint and continuous line from Boston to Portland. The point we make is, that a corporation so constituted cannot be controlled by such a statute as the law of 1867, enacted by one state only; and that, in fact, the language of that act, being expressly limited to " corporations

chartered by the legislature of this state," does not apply to a corporation which exists as a joint and continuous line by the legislatures of three states.

V. As to the right of the plaintiffs to the discovery prayed for, see *Currier* v. *Concord Railroad,* 48 N. H. 321.

*Leavitt* and *Towle,* for the plaintiffs.

" The object of the law of July 5, 1867, on which this bill is founded, is, as its title indicates, to prevent railroad monopolies. It provides that rival and competing lines of railroads shall not be allowed to consolidate them, and that neither of said lines shall be run or operated by any railroad or competing line, under any business contract, lease, or other arrangement, but each and every such railroad shall be run, managed, and operated, separately, by its own officers and agents, and be dependent for its support on its own earnings, upon its local and through business in connection with other roads, and the facilities and accommodations it shall afford the public for travel and transportation, under fair and open competition, unless such lease, contract, or arrangement be authorized by the legislature, and approved by the governor and council." *Currier* v. *Concord Railroad,* 48 N. H. 327.

The chief, paramount clause of the statute is the last quoted, and that clause is pregnant with the meaning and object of the law, viz., " that each and every such railroad shall be dependent for its support on its own earnings from its local and through business in connection with other roads, and the *facilities and accommodations it shall afford the public,* for travel and transportation, *under fair and open competition.*" It is the prominent feature of the law, to which all the others lead up.

To say that that clause is used or meant only to " qualify or explain " the preceding clauses does not help the position of the defendants any, for then its object would be to show that, in the minds of the legislators, consolidation means anything that prevents a road from earning its support, by accommodating the public under fair and open competition. The bill sets out that the Eastern Railroad, though chartered by the legislature of Massachusetts, runs, operates, and controls the Eastern Railroad in New Hampshire, and other railroads chartered by the legislature of this state. When a foreign corporation gets possession of a franchise granted by this state, or controls, runs, or operates another corporation chartered by the legislature of this state, it does so subject to the laws of this state, and must manage, operate, and control such domestic corporation under the limitations, conditions, and restrictions imposed by the laws of this state.

It matters not where the contract in this case was made. It is put in operation here, and by means of and through corporations amenable to our laws; and it thus affects the rights and interests of our citizens, and our courts thus have jurisdiction of the subject-matter, and, if a proper service is made on the offending foreign corporation, the courts

will take jurisdiction of that. *March* v. *Eastern Railroad*, 40 N. H. 577.

By reference to the printed case, or to the bill itself, it will be seen that the bill does not allege, as is claimed by the defendants in their brief, that the Boston & Maine Railroad, by the "joint" action of the legislatures of this state, Massachusetts, and Maine, forms a joint and continuous line from Boston to Portland, but that the Boston & Maine Railroad was chartered by the legislature of this state, and, by the action of the legislatures of this state, Massachusetts, and Maine, forms a joint and continuous line, &c. On this statement in the bill the defendants' fourth cause of demurrer fails utterly.

The fifth cause of demurrer fails also,—1st, Because the bill is not without equity, since the plaintiffs are alleged to be stockholders in the B. & M. R. R., and defrauded and injured by the alleged arrangement between the roads; and 2d, because, by the statute, any citizen of the state may proceed against the violators of this law; and although the plaintiffs are not entitled to the disclosure prayed for, they are entitled to the relief, which is not affected by the demurrer. *Currier* v. *Concord Railroad*, 48 N. H. 330.

LADD, J. It will be convenient to look at the third cause of demurrer first. That is, "Because the said alleged contract is not contrary to any law of this state, and it does not appear by said bill that the same is unreasonable or injurious to the plaintiff." The bill is founded upon the act of 1867, ch. 8, which provides, sec. 1, "That two or more railroad corporations, chartered by the legislature of this state, constituting the whole or part of different lines of route for public travel and transportation between any two cities or towns, or between any city and town, either within or without this state, forming rival and competing lines of route between such points, shall not be allowed to consolidate such roads or lines; and neither of said lines, or any road or roads composing the same, shall be run or operated by any such rival and competing line, or any road or roads, or portion thereof, under any business contract, lease, or other arrangement, but each and every railroad corporation so situated shall be run, managed, and operated separately by its own officers and agents, and be dependent for its support on its own earnings from its local and through business in connection with other roads, and the facilities and accommodations it shall afford the public for travel and transportation under fair and open competition, unless such lease, contract, or arrangement be first authorized by the legislature and approved by the governor and council." The allegation of the bill is, that the Boston & Maine Railroad, a corporation chartered by the legislature of this state, and the Eastern Railroad, a Massachusetts corporation, but which, on the first day of May, 1874, and for a long time prior thereto, did, and does now, run, operate, and control certain railroads chartered by the legislature of New Hampshire, on or about the first day of May, 1874, entered into a contract, agreement, or arrangement, by the terms of which the said

Boston & Maine and Eastern railroads should each retain sixty per cent. of its gross earnings between all competing points of their respective routes and the city of Boston, to pay the running expenses of the respective roads, and the balance of said gross earnings, being forty per cent. thereof, should constitute a common fund to be divided equally between said roads. The question is, whether such a contract and arrangement comes within the prohibition of the act. It is argued, on behalf of the defendants, that the latter part of the section quoted is intended to qualify and explain the preceding clauses, and not to establish a new limitation. The whole section together seems to me quite plain, and when so read the last clause appears to be a specification inserted to make more definite and certain the application and effect of what precedes. First, the consolidation of roads or lines. is prohibited in general terms; then the running of one rival road upon any arrangement by another is prohibited; then the running, management, and operation of every such railroad by its own officers and agents is enjoined; and then comes the provision that each shall be dependent for support upon its own earnings, &c.,—that is, shall not be dependent for support upon the earnings of another,—which seems to be little more than a corollary from what comes before, a specification of an act in the nature of consolidation which had been already forbidden. It seems to me not to admit of doubt that the arrangement set up in the bill comes within the prohibition of the statute. *Currier* v. *Concord Railroad*, 48 N. H. 321, 325, 326, 327.

The first cause of demurrer assigned is, that one of the parties to this arrangement—the Eastern Railroad—is shown by the bill to be a corporation not chartered by the legislature of this state. The bill shows that the Eastern Railroad operates and controls the four roads mentioned, which were chartered by the legislature of this state; and the illegal arrangement complained of has reference to the running and operation of those roads. The case, then, is, that a foreign corporation, having obtained control of several domestic corporations, is operating them in violation of a law of this state; and the position is taken, that, because the act in question is in terms directed against corporations chartered by the legislature of this state, the remedies of the act cannot be applied. I think this position is not tenable. We must look at the act as a whole, see what was the supposed mischief to be remedied, and what was the intention of the legislature in supplying the remedy. It is entitled "An act to prevent railroad monopolies," and its whole scope and manifest import are in harmony with its title. Its provisions are general, and obviously intended to apply to all railroads within the state so situated with respect to each other as to come within its terms. No one can suppose the intention was to except from its operation railroads within our territorial limits, and chartered by the legislature of New Hampshire, which have passed under the control and management of a foreign corporation. Nothing short of the most explicit and unequivocal language would warrant the inference of a legislative intent so anomalous and unjust. The act provides that

two or more railroad corporations, chartered by the legislature of this state, &c., shall not be allowed to consolidate such roads, &c. I think this prohibition is sufficiently broad to forbid any other legal person who may get control of such railroad corporations to do the thing which the corporations themselves are thus enjoined from doing. The application of the statute was clearly intended to be general; and it seems to me it cannot be held to mean anything less than that roads of railroad corporations, chartered by the legislature of this state, shall not be consolidated, &c.; and that, when any one else obtains the control of such corporations, such other person must be held to stand in their place and answer their legal obligations.

The question raised as to the jurisdiction of the court seems to be the same that was settled in *March* v. *Eastern Railroad*, 40 N. H. 548, against the defendants' view.

The fourth cause of demurrer, as I understand it, cannot be sustained without holding that a railroad corporation, chartered by the legislature of this state, may be absolved from obedience to the laws of the state by the fact that its road within our geographical limits forms part of a continuous line extending into other states. Whether delicate questions may arise in fixing the final order in the case, it would be premature now to inquire.

It is admitted that the plaintiffs cannot have the discovery prayed for—*Currier* v. *Concord Railroad, supra;* but I think, upon the facts stated in the bill, they are entitled to the relief prayed for, and that the demurrer must be overruled.

CUSHING, C. J. The statute, an alleged violation of which is the matter complained of, seems to me to have been drawn so as exactly to embrace this suit, as it particularly specifies those cases in which railroads, existing under the laws of New Hampshire, form parts of lines, without limiting those lines to the state.

The injurious effect of a consolidation is the prevention of competition, and that wholesome restraint upon exorbitant fares which can only be secured by free competition. A contract, which provides for dividing the earnings, after deducting a certain percentage for expenses, and which, therefore, makes it indifferent to the parties to the contract in which of the lines the passengers or freight are carried, contains in itself the most essential element of consolidation, and is, therefore, in violation of the law.

It is clear, also, that this court has jurisdiction over the corporations within the state, and whose roads are within the state. It cannot possibly make any difference whether these roads are managed by corporations within the state or out of the state. The process of the court can reach the roads within the state, which is enough for all the purposes of this suit. The case of *Currier* v. *Concord Railroad*, 48 N. H. 321, sufficiently answers the fifth objection, and shows that the plaintiffs are entitled to relief, and that this general demurrer must be overruled, notwithstanding the plaintiffs may not be entitled to the discovery prayed for.

SMITH, J.   The provisions of the act of 1867, ch. 8, cannot be evaded by the leasing of a railroad chartered by the legislature of this state, and located within the state, to a railroad corporation chartered by and located in another state.   Railroads being designed for the public accommodation, like other highways, are public, and at all times subject to the control of the legislature.   Gen. Stats., ch. 146, sec. 1.   When a foreign corporation obtains the control, by lease or otherwise, of a corporation which owes its existence to a charter granted by the legislature of this state, it must operate such domestic corporation agreeably to the provisions of our laws, and in obedience to such restrictions as the legislature may see fit to impose.   It is difficult to see how such foreign corporation can have any other or greater rights than those granted to the corporation to whose rights it has succeeded.   It would be strange, indeed, if a foreign corporation could obtain possession and control of a corporation indebted for its existence to the legislature of this state, and at the same time claim exemption from its authority.

I concur in the views expressed upon the other questions in the case.

The discovery prayed for must be denied.   *Currier* v. *Concord Railroad*, 48 N. H. 321.   But

*The demurrer must be overruled.*